UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

| | |
|---|---|
| ANTONE SILVA, | : |
|     *Plaintiff* | : |
| v. | : C.A. No. 1:19-cv-00429-WES-LDA |
| | : |
| STATE OF RHODE ISLAND, TOWN OF TIVERTON, | : |
| PATRICK W. JONES, Individually and as | : |
| Chief of Police for the Tiverton Police Department, | : |
| SERGEANT MICHAEL BARBOZA, Town of Tiverton | : |
| Police Officer, Individually and in his official capacity, | : |
|     *Defendants* | : |

**MEMORANDUM OF LAW IN SUPPORT OF
PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT**

This matter arises out of the unlawful, false and unconstitutional arrest of the Plaintiff, Antone Silva, by the Tiverton Police Department on two separate occasions: September 8, 2018 and December 28, 2018, based on an alleged violation of a no-contact order.

Both cases were subsequently dismissed as it was determined that the no-contact order on which the police officers arrested the Plaintiff was terminated on June 21, 2018.

**I.      BACKGROUND**

The Plaintiff herein has been arrested on four separate occasions by the Tiverton Police Department all of which have been dismissed under Rhode Island Superior Court Rule 48(a). Three of the four arrests all involved Tiverton Police Officers, Joshua Pelletier and Marco Valzovano.

<u>**First Arrest - November 8, 2017**</u>

The Plaintiff was first arrested by Officer Joshua Pelletier based upon a complaint by a Moving Company that the Plaintiff had hired to move items from a tenant who he had evicted from the property that he owned. The basis for the arrest was based upon an allegation that the Plaintiff had stopped payment on a check to pay for the move. (The stop payment was based on a discussion with the agent of the owner that the Plaintiff had overpaid for the move.) Because the stop payment of a check under which he was charged is a felony, the Plaintiff was required to attend numerous Court appearances in both District Court and Superior Court. The matter was subsequently dismissed by the assistant attorney general as the arrest was not valid in that the statute under which he was charged required not only that the Plaintiff stop payment on the check, but that he had insufficient funds in his account at the time that he stopped payment. The Plaintiff did in fact have sufficient funds in his account and a cursory investigation by Office Pelletier would have revealed same. As such there was no basis for the arrest and the matter was dismissed under Rule 48(a).

**Second Arrest - April 8, 2018**

On April 8, 2018, the Plaintiff was arrested a second time by Tiverton Police Officer Marco Valzovano charging him with an alleged domestic simple assault on his girlfriend Darcie Silvia. Officer Valzovano had been summoned to the Plaintiff's home by dispatch based on a claim that there was a disturbance at the residence. Upon arrival at Mr. Silva's home, the alleged victim Darcie Silvia a/k/a Darcie Lapointe, advised the officer that there was no assault and the parties had only been engaged in a verbal argument. Nonetheless, Officer Valzovano arrested the Plaintiff for domestic assault. Due to the fact that the arrest involved a domestic dispute, a no-contact order was issued by the Court, which was entered in the courts "Odyssey System".[1] (See Ex. 1). (A separate tab in the system documents the no contact order, which then relays the order to the Restraining Order and No-Contact Order system ("R.O.N.C.O.") that documents the order, which is maintained by the attorney general's office and accessible by the police for inquiry as to the status of any order.)

On June 21, 2018, the case was dismissed and the no-contact order was terminated. (See Ex. 2) However, due to inadvertence, the District Court clerk, Tracy Furtado, failed to notify R.O.N.C.O. that the no-contact order had been terminated. As such, the R.O.N.C.O. system still indicated that the no-contact order was active. (Ex 3).

**Third Arrest - September 8, 2018**

On September 8, 2018, the Plaintiff was observed with his girlfriend Darcie Silvia by Tiverton Police Office Valzovano at the Tiverton Twin River Casino. (Tiverton Police Officer Valzovano was the same officer that had previously arrested the Plaintiff on April 8, 2018). Officer Valzovano claims to have checked with the State of Rhode Island's R.O.NC.O. system for any active no-contact orders and determined that the no-contact order in the R.O.N.C.O. system was still active. Based on the active no-contact order, Officer Valzovano placed the Plaintiff under arrest.

Based on the arrest, a second no-contact order was entered on September 10, 2018. (See Ex. 4) On that same day, the Plaintiff appeared in Court and the case was dismissed under Rule 48A as the Court was made aware of Tracy Furtado's error that she had negligently failed to enter the termination of the no-contact order in the Court's system. After the Plaintiff's arrest, Tracy Furtado told the administrative clerk, Maureen Pallazo of her error.

---

[1] The Odyssey System is a computer based data base that documents the case summary including case information, party information, case everts and hearings. The Odysseys System is maintained in the District Courts throughout the State of Rhode Island. The information is typed in by the clerks and other staff at the Court and is updated as various events occur in the case. (See Ex. 1, 7 attached Odyssey System Case Reports.) The Odyssey System also has a separate tab in which restraining orders or no-contact orders are relayed to the R.O.N.C.O. system maintained by the attorney generals office. The R.O.N.C.O. system is also a computer based data system that indicates when a restraining order or no-contact order is entered and also documents when the order is terminated.

**"that she had a lot of cases that day and it's a separate screen that you have to go into. So she did it in the events screen and not in the protective order screen." "After she had a counseling session and she— it was brought to her attention...to reiterate the training she had and its very important that to cover all the bases when you are doing the data" (See Ex. 8 Depo. Maureen Pallazo- pg.20,36)**

On that date the District Court's Odyssey System and R.O.N.C.O. was updated reflecting the June 21st termination and transmitted via J-Links to the Tiverton Police Department, which now documented the June 21st termination of the no-contact order. In addition, on September 11, 2018, the September 10, 2018 no-contact order was also terminated and documented on the state's R.O.N.C.O. system database. (See Ex. 5)

**Fourth Arrest- December 28, 2018**

On December 8, 2018, Officer Ryan Huber was dispatched to the Plaintiff's home based on information about an argument between the Plaintiff and his girlfriend Darcie Silvia. No action was taken by Officer Huber; however he claims to have checked with dispatch who advised him that there was an active no-contact order on file in the R.O.N.C.O. system. In fact, both the R.O.N.C.O. system and the District Court's Odyssey System both indicated that the no-contact order had been terminated. Officer Huber contacted his supervisor, Sergeant Rossi, who, based on information given by Officer Huber, advised Officer Huber to apply for a warrant for the Plaintiff's arrest.

On December 19, 2018, an arrest warrant was issued by the Defendant Sergeant Barboza, for violation of the terminated no contact order. (Sergeant Barboza was the Tiverton court liaison officer on September 10, 2018, when the Plaintiff's case was dismissed for violation of the same terminated no-contact order for which he was now issuing an arrest warrant. At no time did he check with the Court, R.O.N.C.O. or his department whether the no-contact order had been terminated.)

On December 28, 2018, the Plaintiff was observed by Office Pelletier in the Tiverton Twin River Casino and arrested the Plaintiff a second time for the terminated no-contact order. The Plaintiff appeared in Court on December 31, 2018 and the case was again dismissed under Rule 48(a) Rules of Criminal Procedure because the no-contact order was not in effect at the time of the incident.

## II.   PROCEDURAL BACKGROUND

Based on the false arrest of the Plaintiff on September 8, 2018 and December 28, 2018, the Plaintiff filed suit against the State of Rhode Island, claiming negligence and violation of the Plaintiff's Fourth Amendment Constitutional Rights to be free from unlawful search and seizure.

The State of Rhode Island and the Tiverton Police Department and its Defendants filed answers denying the claims. Discovery including numerous depositions and written discovery have been conducted.

Based on the above, the Plaintiff now moves for summary judgment on the issue of liability.

### III.     STANDARD OF REVIEW

Summary judgment is warranted when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). When a Motion for Summary Judgment is directed against a party that bears the burden of proof, the movant bears the "initial responsibility of informing the District Court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986). If that showing is made, the non-movant then bears the burden of producing definite, competent evidence to rebut the motion. See *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 247-48, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986). The evidence "cannot be conjectural or problematic; it must have substance in the sense that it limns differing versions of the truth which a fact finder must resolve at an ensuing trial." *Mack v. Great Atl. & Pac. Tea Co., Inc*., 871 F.2d 179, 181 (1st Cir. 1989). In other words, the non-movant is required to establish that there is sufficient evidence to enable a jury to find in its favor. *DeNovellis v. Shalala*, 124 F.3d 298, 306 (1st Cir.1997).

### III.     ARGUMENT

#### A.     The negligence of the District Court Clerk is undisputed

Rhode Island's formulation of the negligence standard is familiar: "a plaintiff must establish a legally cognizable duty owed by a defendant to a plaintiff, breach of that duty, proximate causation between the conduct and the resulting injury, and the actual loss or damage." *Mills v. State Sales, Inc*., 824 A.2d 461, 467 (R.I.2003) (citing *Jenard v. Halpin,* 567 A.2d 368, 370 (R.I.1989)). Since there remain no acts in dispute about whether the Clerk breached a duty of care to the Plaintiff, this claim is amenable to summary judgment at this stage. Likewise, Plaintiff's under respondeat superior the negligence against the State should be entered subject to the damages cap of $100,000 set forth at R.I. Gen. Laws § 9-31-2.

Here, the negligence of Tracy Furtado, the District Court Clerk, who is employed by the State of Rhode Island, is undisputed. R.I.G.L. §12-29-4 requires that whenever "an order prohibiting contact is issued, modified, or terminated..... the clerk of the court shall forward a copy of the order on or before the next judicial day to appropriate law enforcement for agency specified in the order." R.I.G.L. §12-29-8.1 requires that all terminations of no contact orders be faxed or delivered to R.O.N.C.O. no later than the end of the day of the modification and R.I.G.L. § 12-1-12.2 requires the sealing of arrest records for wrongful arrest within 60 days of such determination that the arrest was wrongful. Here, all three statutes were violated. (See Ex. 6)

The clerk negligently failed to enter the termination of the no-contact order into the Courts' Odyssey System resulting in the Plaintiff's subsequent arrest on September 8, 2018. In fact, as earlier mentioned, the Clerk's supervisor testified that subsequent to the dismissal of the September 8, 2018 arrest, the District Court Clerk was counseled by her supervisors with regard to the necessity

of properly entering information into the Odyssey System in order to avoid situations such as what occurred in this case.

Based on the above it is clear that the Defendant failed to abide by the state statutes and the District Court Rules. As such, the Plaintiff would suggest that this Court find the State of Rhode Island negligent with regard to the actions of its Clerk, resulting in the September 8, 2018 wrongful arrest.

b. **The police officers for the Tiverton Police Department were negligent in failing to adhere to the policies and law resulting in the arrest of the Plaintiff on December 28, 2018.**

On December 10, 2018, Tiverton Police Officer, Ryan Huber, claims that the R.O.N.C.O. System indicated that there was a valid existing no-contact order in effect. It did not. (See Ex. 5). Maureen Pallazo, the Odyssey System and the R.O.N.C.O. system all documented that the no-contact order had been terminated on September 11, 2018. (See Ex. 7) (See Ex. 8 Depo. Pallazo pg. 25).

The documentation of the termination was also forwarded to the Tiverton Police Department via the J-Links System on September 10, 2018 that forwards Court's actions on cases to the Police Department involved in the case.(See Ex. 8 Depo. Pallazo pg. 21) (See also Ex. 7)

Officer Pelletier also utterly failed to follow the procedures outlined by the State of Rhode Island requiring that prior to arresting any person in violation of a no-contact order that the officer double check with the Court to ensure that the no-contact order was still in effect. Nor did he check with the Court or his department in violation of R.O.N.C.O. policies and procedures (See Ex. 9) and ignored the pleas of both the Plaintiff and Darcie Silvia, the alleged victim, who was present, that the no-contact order had been terminated.

Finally, neither Officer Huber, Officer Pelletier, Officer Rossi or Officer Barboza, who issued the arrest warrant, checked with the Clerk's office to determine whether the no-contact order was still active. (See Ex, 10)

As such, it is clear that the Town of Tiverton was negligent with regard to the second arrest of the Plaintiff on December 28, 2018.

c. **The Officers of the Tiverton Police Department were in violation of the Plaintiff's Fourth Amendment constitutional right to be free from unlawful search and seizure**

Plaintiff specifies in his Complaint, the two specific arrests that he claims are Fourth Amendment violations. However, the Plaintiff is only pressing the September 28th arrest without probable cause as violative of his fourth amendment protections. The factual allegations in the Plaintiff's Complaint and in the discovery constitute unreasonable search and seizure. Defendants assert, as to each of these, the defense of qualified immunity.

A court evaluating a claim of qualified immunity must first determine whether a plaintiff has alleged a deprivation of a constitutional or federal right by a defendant official. See *Abreu-Guzman v. Ford*, 241 F.3d 69, 73 (1st Cir.2001). If so, the Court must next "determine whether that right was clearly established at the time of the [official's] alleged violation." *Wilson v. Layne,* 526 U.S. 603, 609, 119 S. Ct. 1692, 143 L. Ed. 2d 818 (1999) (citing *Conn v. Gabbert,* 526 U.S. 286, 290, 119 S. Ct. 1292, 143 L. Ed. 2d 399 (1999)) (internal quotation marks omitted).

"Only after both of these questions are answered affirmatively, should the Court address `the particular conduct in question,' *Abreu-Guzman*, 241 F.3d at 73, to decide whether an objectively reasonable official would have believed that his conduct was lawful `in light of clearly established law and the information the official possessed at the time of his allegedly unlawful conduct.'" *Kelley v. LaForce,* 288 F.3d 1, 6 (1st Cir.2002) (citing *McBride v. Taylor*, 924 F.2d 386, 389 (1st Cir.1991)). Keeping these principles in mind, the Court assesses the remaining putative Fourth Amendment violations.

Here, the Plaintiff was arrested without probable cause. Following the qualified immunity praxis, the Court first must determine whether these are alleged constitutional deprivations. It is clearly established that an arrest without probable cause is unconstitutional.

The Tiverton Officers falsely arrested the Plaintiff on two separate occasions. Plaintiff therefore has alleged a constitutional deprivation of a clearly established right; the question is whether there are any genuine issues of material fact in dispute about whether the arrests were objectively reasonable under the circumstances known to the officers at the time.

There are no such facts in dispute. Officer Barboza was aware that the no contact order had been terminated and still issued an arrest warrant.(See Ex. 11, Depo. Chief Patrick Jones pgs. 41-42,85). Officer Huber who requested the arrest warrant falsely claimed that he had checked with R.O.N.C.O. as to whether there was an active no-contact order. (He claims he checked , however, all of the documentation and testimony reveals that the order was terminated in their data bases (See Ex. 5,7) Officer Pelletier, the officer that arrested him on April 8,2018, on which the no-contact order was initially issued knew that the case had been dismissed and the no-contact order terminated on June 21st, yet nevertheless again arrested the Plaintiff on December 28, 2018. He failed to do even a cursory check with the Court to determine if the order had been rescinded and rejected the pleas of both the Plaintiff and Darcie Silva that the no-contact order had twice been terminated and arrested him a second time.  His conduct was therefore objectively unreasonable.

Based on the above, the Plaintiff would ask that the Court find the Defendants in violation of the Plaintiff's guarantees to be free for an unconstitutional search and seizure under the Fourth Amendment to the United States Constitution.

In the event that this Court should so find the Plaintiff intends to file a petition for attorneys fees and costs which encompass in excess of 120 hours of time.

Plaintiff, Antone Silva,
By his Attorneys,
BRIAN CUNHA & ASSOCIATES, P.C.

*/s/ Brian R. Cunha*

_____
Brian R. Cunha, Esq.
311 Pine Street
Fall River, MA 02720
Tel: (508) 675-9500
Fax: (508) 679-6360
R.I.#4074

## CERTIFICATE OF SERVICE

      I hereby certify that on the 9th day of July 2020, I caused a copy of the within to be electronically filed and served through the CM/ECF filing system, which is available for electronic downloading and viewing, on all attorneys of record, who are as follows:

Marc DeSisto, Esq.
DeSisto Law, LLC
60 Ship Street
Providence, RI 02903

Alexander D. Schultheis, Esq.
150 South Main Street
Providence, RI 02903

*/s/ Brian R. Cunha*
_____
