UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

| | |
|---|---|
| ANTONE SILVA, <br> *Plaintiff,* <br><br> v. <br><br> STATE OF RHODE ISLAND, TOWN OF TIVERTON, PATRICK W. JONES, Individually and as Chief of Police for The Tiverton Police Department, SERGEANT MICHAEL BARBOZA, Town of Tiverton Police Officer, Individually and in his official capacity: <br><br> *Defendants.* | C.A. No.: 1:19-cv-00429-MSM-LDA |

**DEFENDANT, STATE OF RHODE ISLAND'S OBJECTION TO PLAINTIFF, ANTONE SILVA'S MOTION FOR SUMMARY JUDGMENT**

NOW COMES, the Defendant, State of Rhode Island (the "State"), and hereby responds and objects to the Plaintiff, Antone Silva's ("Plaintiff") Motion for Summary Judgment. As grounds in support thereof, the State asserts that the Plaintiff's Motion should be denied for its own failure to comport with Local Rule 56 of the United States District Court for the District of Rhode Island, and also because there remain genuine issues of material fact regarding whether the State is liable for the Plaintiff's December 2018 arrest, such that the Plaintiff is not entitled to judgment as a matter of law on his singular negligence count against the State.

**I. UNDISPUTED FACTS**

On April 14, 2018, the Plaintiff was arrested by Tiverton Police and was charged with domestic simple assault on his girlfriend, Darcie LaPointe. *See* **Exhibit**

**1,** attached hereto, Plaintiff's Answers to State's Interrogatories, Answer to Interrogatory No. 19. As a result of the April 14, 2018 arrest, a No-Contact Order (the "First No-Contact Order") was issued against the Plaintiff. *See* **Ex. 1**, Answer to Interrogatory No. 19. On June 21, 2018, the underlying case regarding the First No-Contact Order was dismissed by the Newport County District Court. *See* **Ex. 1**, Answer to Interrogatory No. 19.

Subsequently, on September 8, 2018, the Plaintiff was arrested by Defendant, Joshua Pelletier ("Officer Pelletier") of the Tiverton Police at the Tiverton Twin River Casino for allegedly violating the First No-Contact Order. *See* **Ex. 1**, Answer to Interrogatory No. 3; *see also* **Exhibit 2**, attached hereto, Deposition Transcript of Sergeant Michael Barboza ("Sergeant Barboza"), at ps. 8:15-24 – 9:1; 10:2-13; **Exhibit 3**, attached hereto, Deposition Transcript of Officer Pelletier, at p. 12:14-20. Upon making the arrest of the Plaintiff on September 8, 2018, Officer Pelletier did not speak with a member of the Tiverton Police Department and was not advised that the First No-Contact Order for which he was arresting Plaintiff had been previously dismissed. *See* **Ex. 3**, at p. 13:20-24 – 14:1-6. As a result of the September 8, 2018 arrest, a second no-contact order was entered against the Plaintiff on September 10, 2018 (the "Second No-Contact Order"). *See* **Exhibit 4**, attached hereto, Deposition Transcript of Maureen Palazzo, at p. 26:20-24. The First No-Contact Order entered on April 14, 2018 was subsequently terminated on September 10, 2018. *See* **Ex. 4**, at p. 30:19-23. The Second No-Contact Order issued on September 10, 2018 was also terminated the same day. *See* **Ex. 4**, at p. 23:23-24 – 24:1-3. The Second No-Contact

Order was marked by the Court as being accepted into BCI's computerized criminal history system on September 11, 2018. *See* **Ex. 4**, at p. 24:5-8. Additionally, on September 10, 2018, an electronic J-LINKS notification update was sent to the Tiverton Police Department, notifying them of the dismissal of the Second No-Contact Order. *See* **Ex. 4**, at p. 24:16-22; s*ee also* **Exhibit 5**, attached hereto, Court Docket from Case No. 21-2018-01838; **Exhibit 6**, attached hereto, Deposition Transcript of Chief Patrick Jones ("Chief Jones"), at p. 49:14-23. J-LINKS is a court connect system that links the police department with the court system. *See* **Ex. 6**, at p. 12:19-21. If a J-LINKS update is made to the court's system regarding a protection order being removed and terminated, that information would be received by the prosecution officer of the respective police department. *See* **Ex. 6**, at p. 14:24 – 15:1-13.

It is undisputed that Sergeant Michael Barboza ("Sergeant Barboza") is the prosecution officer for the Town of Tiverton. *See* **Ex. 6**, at p. 13:15-18; *see also* **Ex. 2,** at p. 6:9-20. Sergeant Barboza would be the individual who would be aware of the termination of a No-Contact Order for a Tiverton case as the prosecuting officer for Tiverton. *See* **Ex. 6**, at ps. 16:19-24; 17:1-3; 71:14-22. Sergeant Barboza was aware of the termination of the April 2018 No-Contact Order, along with the dismissal of the underlying case, on June 21, 2018. *See* **Ex. 2**, at p. 17:17-22; *see also* **Ex. 6**, at p. 15:9-13. Sergeant Barboza was also in court on September 10, 2018 and dismissed the Plaintiff's second arrest from September 8, 2018, which was subsequently ordered to be dismissed by the Newport County District Court. *See* **Ex. 2**, at ps. 12:15-24; 13:1-12; 48:5-11. Sergeant Barboza testified at his deposition that after a case is dismissed,

3

it is a custom and practice of the Tiverton Police Department to go back to the police department and enter information into the department's computer system regarding such a dismissal by entering the arrest number and closing out the arrest. *See* **Ex. 2**, at p. 19:8-13. Information regarding such a dismissal or the closing out of an arrest is available within the Tiverton Police Department's computer system. *See* **Ex. 2**, at p. 19:14-17; *see also* **Ex. 6**, at p. 47:17-22. On September 10, 2018, Sergeant Barboza testified that he returned to the Tiverton Police Station to enter the dismissal of the September 10, 2018 arrest matter that same day and closed out the arrest in the Tiverton Police Department's system. *See* **Ex. 2**, at p. 56:4-12. Sergeant Barboza also testified that he spoke to the detectives regarding the dismissal, specifically indicating that the Plaintiff's No-Contact Order from April 2018 was not active anymore. *See* **Ex. 2**, at p. 56:4-12. On September 10, 2018, Officer Pelletier himself was a detective in the Tiverton Police Department, and thus would likely have been told this information by Sergeant Barboza. *See* **Ex. 3**, at p. 8:14-24 – 9:1-4.

Just a few months later, on December 8, 2018, Officer Huber of the Tiverton Police Department went to the Plaintiff's house due to a report of a breaking and entering.; *See* **Exhibit 7**, attached hereto, Town's Answers to Plaintiff's Interrogatories, Answer to Interrogatory No. 15. Officer Pelletier, who ultimately prepared the December 2018 police report, indicated in said report for his December 10, 2018 narrative that "dispatch advised units that there was an active No Contact/Protection Order between Darcie Silva (Protected Party) and Antone Silva." *See* **Ex. 3**, at p. 38:5-16. *see also* **Exhibit 8**, attached hereto, Town's Responses to

4

Plaintiff's Requests for Production of Documents, Response No. 14, at Bates Stamp No. Tiverton-RFP-000608. Officer Pelletier testified that, at the time of the Plaintiff's arrest, he was not aware of the fact that this active no-contact order was the Second No-Contact Order that was previously dismissed by the Court, which was specifically a Tiverton case. *See* **Ex. 3**, at 39:7-17. Officer Pelletier also testified that ordinarily dispatch does not tell officers the city, town, or municipality from where an active No-Contact Order originates. *See* **Ex. 3**, at p. 39:18-24 – 40:1. Notwithstanding this statement, the Police Report, which Officer Pelletier himself authored, specifically notes that the active No-Contact Order upon which the Plaintiff's December 2018 arrest was based was the Second No-Contact Order, a Tiverton case, and, as noted above, for which a J-LINKS electronic notification update was sent to the Tiverton Police Department on September 10, 2018. *See* **Ex. 2**, at p. 56:4-12; **Ex. 3**, at p. 34:9-18; **Ex. 6**, at p. 49:14-23; **Ex. 8**, at Bates Stamp No. Tiverton-RFP-000633.

Based upon the police report narrative authored by Officer Pelletier on December 8, 2018, on December 19, 2018, Sergeant Barboza signed an arrest warrant for the Plaintiff's arrest for alleged violation of the Second No-Contact Order. *See* **Ex. 2**, at ps. 9:21-24 – 10:1. Sergeant Barboza testified that once the warrant was left for his review and signature, he believed that the responding officers "followed all the steps. They called RONCO. RONCO confirmed…the protection order [was] active." *See* **Ex. 2**, at p. 66:10-12. Eleven (11) days elapsed between Officers Huber and Pelletier first learning of the existence of the active no-contact order and their subsequent drafting of the arrest warrant and its execution by Sergeant Barboza. *See*

**Ex. 2**, at p. 9:21-24 – 10:1. Sergeant Barboza testified that he did not speak with any officers in the course of reviewing or presenting the warrant. *See* **Ex. 2**, at p. 28:21 – 29:4; 66:7-16, 66:22-24 – 67:1-2. The information regarding the dismissal of the Second No-Contact Order was thus available in the Tiverton Police Department's system at the time of the Plaintiff's December 2018 arrest *See* **Ex. 2**, at p. 56:4-12.

Based upon the police report from December 8, 2018, an arrest warrant was signed by Sergeant Barboza against the Plaintiff for alleged violation of a No-Contact Order. *See* **Ex. 2**, at p. 9:21-24 – 10:1. Subsequently, on December 28, 2018, the Plaintiff was arrested for an alleged violation of a No-Contact Order. *See* **Ex. 1**, Answer to Interrogatory No. 19. According to the Bureau of Criminal Identification's ("BCI") own training manual instructions, anytime a police department calls BCI after-hours to verify the active state of a No-Contact Order, the police department is always instructed to double-check this with the Courts to verify the accuracy of whether a No-Contact order is active or not. *See* **Exhibit 9**, attached hereto, Deposition Transcript of Edward Troiano, at p. 17:18-24 – 18:1-3; 19:4-11; *see also* **Exhibit 10**, attached hereto, BCI Training Instructions. Despite Officer Pelletier's testimony that dispatch contacted "RONCO" at the BCI on December 8, 2018 to confirm the existence of the active No-Contact Order against the Plaintiff, it appears that dispatch did not contact the Courts at any time to confirm and double-check whether the Second No-Contact Order was active or not, as BCI would ordinarily instruct them to do. *See* **Ex. 3**, at p. 38:5-16; 39:18-24 – 40:1.

## II. STANDARD OF REVIEW

Rule 56 of the Federal Rules of Civil Procedure provides that "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *See* Fed. R. Civ. P. 56(a). "A party asserting that a fact cannot be genuinely disputed must support the assertion by…(B) showing that the materials cited do not establish…the presence…of a genuine dispute…". *See* Fed. R. Civ. P. 56(c)(1)(B). Importantly, "A party may object that the material cited to support…a fact cannot be presented in a form that would be admissible in evidence." *See* Fed. R. Civ. P. 56(c)(2).

Summary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the [Civil] Rules as a whole, which are designed to 'secure the just, speedy and inexpensive determination of every action." *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986). "[T]he [non-moving] party must present affirmative evidence in order to defeat a properly supported motion for summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 257 (1986). For the purposes of a summary judgment motion, "all inferences from facts contained in affidavits, exhi[]bits and depositions 'must be viewed in the light most favorable to the party opposing the motion.'" *Ferguson v. Omnimedia, Inc.*, 469 F.2d 194, 197 (1st Cir. 1972) (quoting *United States v. Diebold*, 369 U.S. 654, 655 (1962)); *see also Rogen v. Ilikon Corp.*, 361 F.2d 260, 266, n. 6 (1st Cir. 1966) (quoting *Diebold*)); *Poller v. Columbia Broadcasting System*, 368 U.S. 464, 473 (1972). "A litigant has a right to a

trial where there is the *slightest* doubt as to the facts." *Peckham v. Ronrico Corporation*, 171 F.2d 653, 657 (1st Cir. 1948) (*emphasis added*).

### III. ARGUMENT

#### a. The Plaintiff's Motion for Summary Judgment does not comport with Local Rule 56.

Local Rule 56 of the U.S. District Court for the District of Rhode Island provides that "A motion for summary judgment **shall** be accompanied by a separate Statement of Undisputed Facts that concisely sets forth all facts that the movant contends are undisputed and entitle the movant to judgment as a matter of law." *See* LR Cv 56(a)(1) (*emphasis added*). Subsection (a)(2) further provides that "The Statement of Undisputed Facts **shall** be a separate filing…Each "fact" **shall** be set forth in a separate, numbered paragraph and **shall** identify the evidence establishing that fact, including the page and line of any document to which reference is made…". *See* LR Cv 56(a)(2) (*emphasis added*). As is true of all of the local rules, they "shall apply to all proceedings in the United States District Court for the District of Rhode Island." *See* LR Gen 101(c).

It is unequivocal that the Plaintiff's Motion for Summary Judgment does not contain such a Statement of Undisputed Facts. Without such a statement, the State cannot file its required Statement of Disputed Facts, alleging which facts it asserts create genuine issues of material fact that would necessitate a trial in this matter. Importantly, Local Rule 56 provides that "No party shall file more than one motion for summary judgment unless the Court otherwise permits for **good cause shown**." *See* LR 56(c) (*emphasis added*). Thus, the Plaintiff's failure to comply with the

mandates of Local Rule 56, by themselves, should necessitate denial of his Motion in this instance, and, perhaps even more importantly, he should not be permitted to re-file another Motion for Summary Judgment unless he demonstrates the requisite "good cause" for reasons *other* than his lack of compliance with the mandates of Local Rule 56 (*emphasis added*).

> **b. The Plaintiff's Motion for Summary Judgment accordingly fails to point to any evidence which could demonstrate the absence of a genuine issue of material fact in his favor regarding the State's liability for his arrest in December 28, 2018.**

Just as important as compliance is with the Local Rules, so does such compliance yield certain legal results. For example, Local Rule 56(a)(3) specifically provides that "any fact alleged in the movant's Statement of Undisputed Facts shall be deemed *admitted* unless expressly denied or otherwise controverted by a party objecting to the motion." *See* LR 56(a)(3) (*emphasis added*). In other words, any facts that the Plaintiff chooses to put forth in his or her Statement of Facts as "undisputed" are automatically admitted unless specifically objected to by the non-moving party. *Id.* It necessarily follows, however, that if the moving party does not submit a statement containing any such "undisputed" facts, any "facts" contained within its memorandum cannot be deemed admitted in the first instance. If they cannot be deemed admitted into the record by operation of Local Rule 56(a)(3), then there is no evidence before this Honorable Court to demonstrate the absence of a genuine issue of material fact which would necessitate the granting of summary judgment in the Plaintiff's favor. Simply put, by operation of Local Rule 56(a)(3), because the Plaintiff failed to file his own Statement of Undisputed Facts, none of the "facts" that he lists

in his memorandum can be considered "properly admitted" from an evidentiary standard, if the language of Local Rule 56(a)(3) is given its plain and ordinary meaning. The Plaintiff's Motion for Summary Judgment must accordingly be denied for its failure to point to a set of undisputed facts in the manner so required by this Honorable Court's own Local Rules. *See* LR Cv 56(a)(3).

### c. The State asserts that there remain genuine issues of material fact as to whether it is liable for the arrest of the Plaintiff on December 28, 2018.

Assuming the Court is willing to credit the factual assertions made in the Plaintiff's Supporting Memorandum, it is evident there remain genuine issues of material fact regarding the liability of the State for the second arrest of the Plaintiff on December 28, 2018.

Pursuant to the Plaintiff's Second Amended Complaint, there are twenty-one (21) total counts alleged, but only one is alleged against the State: negligence. *See* **Exhibit 11**, attached hereto, ECF No. 31, ¶¶ 96-100. Because negligence is a state tort claim, this Honorable Court must look to Rhode Island state case law on negligence to resolve this matter. *Erie Railroad Co. v. Tompkins*, 304 U.S. 64 (1938).

To succeed on a *prima facie* claim for negligence, a plaintiff must demonstrate: (1) a legally cognizable duty owed by the defendant to the plaintiff; (2) a breach of that duty; (3) that the defendant's conduct was the proximate cause of the injury; and (4) actual loss or damage. *Medeiros v. Sitrin*, 984 A.2d 620, 625 (R.I. 2009); *Montuori v. Narragansett Electric Co.*, 418 A.2d 5, 9 (R.I. 1980). Whether a duty exists is a question of law for the court to decide. *Hennessey v. Pyne*, 694 A.2d 691 (R.I. 1997).

The burden rests with the plaintiff to "establish a standard of care and prove, by a preponderance of the evidence, that the defendant deviated from that standard of care." *Riley v. Stone*, 900 A.2d 1087, 1095 (R.I. 2006). In situations where "the court concludes that no duty exists, 'then the trier of fact has nothing to consider and a motion for summary judgment must be granted.'" *Soave v. National Velour Corp.*, 863 A.2d 186, 188 (R.I. 2004). Because the existence of a legal duty is a question of law, it is axiomatic that the analysis of a negligence claim begins with the identification of whether a legal duty of care is owed by the defendant to the plaintiff. *Ferreira v. Strack*, 636 A.2d 682, 685 (R.I. 1994); *Wells v. Smith*, 102 A.3d 650, 653 (R.I. 2014). "[T]he existence and the extent of a duty of care are questions of law * * * [, but] 'whether such duty has been breached and whether proximate cause [exists] are the questions for the factfinder.'" *Seide v. State*, 875 A.2d 1259, 1268 (R.I. 2005) (referencing *Rodrigues v. Miriam Hospital*, 623 A.2d 456, 461 (R.I. 1993) (quoting *Mignone v. Fieldcrest Mills*, 556 A.2d 35, 37 (R.I. 1989)). "There is no question that the violation of a statute or an ordinance is not negligence *per se*, but is to be used by the trier of the facts merely as an aid in determining that issue on consideration of all the evidence." *Salcone v. Bottomley*, 129 A.2d 635, 637 (R.I. 1957) (referencing *Audette v. New England Transportation Co.*, 46 A.2d 570 (R.I. 1946)).

In determining proximate cause, however, a Court must also take into account whether there are any other superseding causes, which "exist when an independent and unforeseeable intervening or secondary act of negligence occurs, after the alleged tortfeasor's negligence, and that secondary act becomes the sole proximate cause of

the plaintiff's injuries." *Seide*, 875 A.2d at 1270 (quoting *Contois v. Town of West Warwick*, 865 A.2d 1019, 1027 (R.I. 2004)). "If the independent or intervening cause is *reasonably foreseeable*, the causal connection remains unbroken." *Almedia v. Town of North Providence*, 468 A.2d 915, 917 (R.I. 1983) (*emphasis added*). "Generally, whether an intervening cause was foreseeable is not the province of the trial justice but is a question of fact that should be submitted to the jury." *Seide*, 875 A.2d at 1270 (referencing *Pantalone v. Advanced Energy Delivery Systems, Inc.*, 694 A.2d 1213, 1216 (R.I. 1997)). Hence, the Rhode Island Supreme Court itself has noted that "[o]rdinarily, the determination of proximate cause * * * is a question of fact that should not be decided by summary judgment." *Munroe v. Cheaters Holding Corp.*, 808 A.2d 645, 646 (R.I. 2002).

Here, the State concedes that a duty was owed to the Plaintiff under R.I. Gen. Laws § 12-29-8.1, pertaining to protective orders and no-contact orders, which requires that "all modifications and terminations of the orders must also be faxed or delivered to the B.C.I. unit no later than the end of the day of the modification." *See* R.I. Gen. Laws § 12-29-8.1(b)(2). Under this standard, it is evident that a No-Contact Order must be removed, at the very latest, by the end of the same day that it is modified. While the State concedes a duty was owed to the Plaintiff to ensure that the No-Contact Orders were removed from the R.O.N.C.O. system, it is evident from the undisputed facts of this case that there indeed remain genuine issues of material fact as to whether the State breached this duty, or in the alternative, is in fact the sole proximate cause of the Plaintiff's second arrest on December 28, 2018, and

12

whether or not the Town Defendants' are responsible as an intervening cause of the Plaintiff's second arrest.[1] Indeed, Plaintiff points to nothing to suggest that the State Defendant is responsible (or contributed) to his second arrest.

First, as noted above, it is undisputed that Sergeant Barboza is the prosecuting officer for the Town of Tiverton. *See* **Ex. 6**, at p. 13:15-18; *see also* **Ex. 2**, at p. 6:9-20. Sergeant Barboza would be the individual who would be aware of the termination of a No-Contact Order for a Tiverton case as the prosecuting officer for Tiverton. *See* **Ex. 6**, at ps. 16:19-24; 17:1-3; 71:14-22. Sergeant Barboza testified that he was physically in court on September 10, 2018 when the Plaintiff was arraigned on the charges for his second arrest from two (2) days prior, and Sergeant Barboza ultimately chose to dismiss the charges against the Plaintiff, which dismissal was ordered by the Newport County District Court. *See* **Ex. 2**, at p. 12:15-24; 13:1-12; 48:5-11. Sergeant Barboza also testified that after a case is dismissed, it is a custom and practice of the Tiverton Police Department to go back to the police department and enter information into the department's computer system regarding such a dismissal by entering the arrest number and closing out the arrest. *See* **Ex. 2**, p. 19:8-13. The information that is entered regarding the dismissal or closing out of an arrest is available within the Tiverton Police Department's computer system for anyone within the department to view. *See* **Ex. 2**, at ps. 19:14-17; **Ex. 6**, at p. 47:17-22. Sergeant Barboza testified that he recalls something similar happening on

---

[1] The State asserts that it is not contesting its liability for the Plaintiff's first arrest on September 8, 2018.

13

September 10, 2018 after he dismissed the Plaintiff's second arrest: that he "probably" came back to the station and "told the guys in detectives, Yeah. This guy's order was not active anymore…And I closed the case out of the system…". *See* **Ex. 2**, at p. 56:4-12. On September 10, 2018, Officer Pelletier himself was a detective in the Tiverton Police Department, and thus would likely have been told about the dismissal of the Plaintiff's No-Contact Order by Sergeant Barboza. *See* **Ex. 3**, at 8:14-24 – 9:1-4. Additionally, on September 10, 2018, an electronic J-LINKS notification update was sent to the Tiverton Police Department, notifying them of the dismissal of the Second No-Contact Order. *See* **Ex. 4**, at p. 24:16-22; s*ee also* **Ex. 5**; **Ex. 6**, at p. 49:14-23. Chief Jones testified that if a J-LINKS update is made to the court's system regarding a protection order being removed and terminated, that information would be received by the prosecution officer of the respective police department. *See* **Ex. 6**, at p. 14:24 – 15:1-13. Therefore, with all reasonable inferences being drawn in favor of the State as the non-moving party, there are clearly genuine issues of material fact outstanding, especially since the Second No-Contact Order was timely terminated by the District Court and accepted into the J-Links system notifying the Tiverton Police of the same. *See* **Ex. 4**, at 24:16-22; *see also* **Ex. 5**; **Ex. 6**, at p. 49:14-23. Specifically, there are genuine issues of material fact surrounding whether Sergeant Barboza, Officer Pelletier, and Officer Huber, and therefore the Town, were all aware of, had personal knowledge of, and had access to information showing that the Second No-Contact Order was terminated at the time that they sought or executed an arrest warrant for the Plaintiff in December 2018. Drawing all inferences in the State's

14

favor, this Court should conclude that the State breached no duty and that it was not reasonably foreseeable that Officers Huber and Pelletier would seek the arrest warrant despite possessing this knowledge, and therefore, a jury might find that such conduct constitutes an intervening, proximate cause leading to the Plaintiffs' December 2018 arrest. For this reason, it is undisputed that this remains a substantial and genuine issue of material fact that necessitates denying the Plaintiff's Motion for Summary Judgment on the question of the State's liability for the Plaintiff's December 2018 arrest.

Even further, as it pertains to the December 2018 arrest itself, Officer Huber initially arrived at the Plaintiff's house on December 8, 2018 due to a report of a breaking and entering. *See* **Ex. 7**, Answer to Interrogatory No. 15. Officer Pelletier, who ultimately prepared the December 2018 police report, indicated in said report for his December 10, 2018 narrative that "dispatch advised units that there was an active No Contact/Protection Order between Darcie Silva (Protected Party) and Antone Silva." *Id.*; *see also* **Ex. 8**, Response No. 14, at Bates Stamp No. Tiverton-RFP-000608; **Ex. 3**, at p. 38:5-16. At his deposition, Officer Pelletier testified that he based the December 2018 arrest of the Plaintiff upon what was relayed to dispatch by R.O.N.C.O. regarding the active status of the No-Contact Order. *See* **Ex. 3**, at p. 38:5-16. Officer Pelletier testified that at the time of the Plaintiff's arrest, he was not aware of the fact that this active no-contact order was the September 10th no-contact order that had been dismissed by the Court, which was specifically a Tiverton case. *Id.*, at p. 39:7-17. Officer Pelletier also testified that ordinarily dispatch does not tell

15

officers the city, town, or municipality from where an active No-Contact Order originates. *Id.*, at p. 39:18-24 – 40:1. Notwithstanding this statement, the Police Report, which Officer Pelletier himself authored, specifically notes that the active No-Contact Order upon which the arrest was based was the Second No-Contact Order from September 10, 2018, a Tiverton case, and, as noted above, for which a J-LINKS electronic notification update was sent to the Tiverton Police Department on September 10, 2018. *See* **Ex. 2**, at p. 56:4-12; **Ex. 3**. at p. 34:9-18; **Ex. 6**, at p. 49:14-23; **Ex. 8**, Response No. 14, at Bates Stamp No. Tiverton-RFP-000633. A reasonable inference may be drawn that Officer Pelletier was aware of this information at the time of arresting the Plaintiff in December 2018 because he was a detective within the Tiverton Police Department on September 10, 2018, the date Sergeant Barboza dismissed the case and told all of the detectives at the station about the dismissal. *See* **Ex. 3**, at p. 56:4-12. Further, this information could easily have been obtained by checking the Tiverton Police Department's computer system, which would have shown the arrest from September 2018, and the no-contact order associated with it, being terminated and inactive.[2] *See* **Ex. 2**, at p. 19:8-17; 56:4-12; *see also* **Ex. 6**, at p. 47:17-22.

---

[2] Ironically, when Officer Pelletier was posed a hypothetical scenario at his deposition, one which pertained to a domestic violence situation, and where he had personal knowledge that a no-contact order had been dismissed, but a victim indicated it was still active, he testified that he would not make an arrest in that instance "because I would have had knowledge that the no contact order was dismissed." *See* **Ex. 3,** at p. 40:13-24; 41:1-13; 41:21-24; 42:1-24; 43:1-8.

16

Additionally, based upon the police report narrative authored by Officer Pelletier on December 8, 2018, and December 19, 2018, Sergeant Barboza signed an arrest warrant for the Plaintiff's arrest for alleged violation of the now-dismissed Second No-Contact Order. *See* **Ex. 2**, at ps. 9:21-24 – 10:1. As noted above, Sergeant Barboza would have been aware of the dismissal of the September 10, 2018 case because he was physically in court and was the individual who ordered dismissal of the case. *Id.*, at p. 12:15-24; 13:1-12; 48:5-11. Additionally, he returned to the police station, entered that information into the department's system, and told the detectives about the dismissal of the case, which would have included Officer Pelletier at the time. *See Id.*, at p. 56:4-12. Notwithstanding, Sergeant Barboza testified that once the warrant was left for his review and signature, he believed that the responding officers "followed all the steps. They called RONCO. RONCO confirmed…the protection order [was] active." *See* **Ex. 2**, at p. 66:10-12. Despite learning about the active no-contact order on December 8, 2018, eleven (11) days elapsed between Officers Huber and Pelletier first learning of its existence and their subsequent drafting of the arrest warrant and its execution by Sergeant Barboza. *See* **Ex. 2**, at p. 9:21-24; 10:1. Sergeant Barboza testified that he did not speak with any officers in the course of reviewing or presenting the warrant. *See* **Ex. 2**, at p. 28:21-29:4; 66:7-16, 66:23-67:2.[3] However, a reasonable individual in Sergeant Barboza's

---

[3] Sergeant Barboza testified he was unsure if the no-contact order upon which the December 19, 2018 arrest warrant issued originated from another city or town within the State. *See* **Ex. 2**, at p. 49:10-11. However, according to the Tiverton Police Department's own police report regarding the December 28, 2018 arrest, the basis upon which Mr. Silva was arrested (and for which Sergeant Barboza signed the arrest

17

position would have checked the Tiverton Police Department's system within that eleven (11) day span, prior to executing the arrest warrant, and found that the September 10th no-contact order upon which the December 2018 arrest warrant was based was clearly inactive. A reasonable person in Sergeant Barboza's position would also attempt to confirm where the active No-Contact Order originated from to ensure it was not a Tiverton case that was previously dismissed. *Id.* This information was clearly available to Sergeant Barboza at the time of executing the Plaintiff's December 2018 arrest warrant, and he specifically was the one who entered it into the Department's system and informed the other detectives about it. *See* **Ex. 2**, at p. 56:4-12. Therefore, all of these facts clearly show there remain genuine issues of material fact as to what Sergeant Barboza knew at the time of executing the arrest warrant on December 19, 2018, and therefore, whether his conduct constituted an intervening cause that became the proximate cause of the Plaintiff's December 2018 arrest.[4]

---

warrant) was supposedly for violation of the September 10, 2018 no-contact order, which Sergeant Barboza would have known was terminated and/or dismissed, as he was in court and requested the dismissal, as well as input the dismissal into Tiverton's Police system for everyone else at the department to access. *See* **Ex. 8**, at Bates Stamp No. Tiverton-RFP-000633.

[4] It is important to note that the December 2018 arrest of the plaintiff was not a warrantless arrest like the September 8, 2018 arrest, where the Town's officers were required to make a "spur-of-the-moment" type of decision to arrest a particular suspect, only to later have there be no probable cause found to justify their actions. *See Briggs v. Malley*, 748 F.2d 715, 721 (1st Cir. 1984) ("[L]iability does not attach simply because there is a later determination of no probable cause."). For the December 2018 arrest, Officers Huber and Pelletier specifically chose to wait a couple of days after the initial encounter with the Plaintiff on December 8, 2018 prior to submitting their arrest warrant. Because there was an eleven (11) day gap between

## IV. CONCLUSION

For the reasons set forth, the State respectfully requests that this Honorable Court deny the Plaintiff, Antone Silva's Motion for Summary Judgment, finding that the Plaintiff has failed to prove the absence of a genuine issue of material fact as it pertains to the State's liability for the Plaintiff's arrest on December 28, 2018, and that he is not entitled to judgment as a matter of law.

---

their initial encounter with the Plaintiff, and Sergeant Barboza's subsequent execution of the arrest warrant, the process was much more deliberative, and therefore afforded Officers Huber and Pelletier, as well as Sergeant Barboza, ample time to investigate and confirm whether the active no-contact order outstanding against the Plaintiff was from a Tiverton case or from another municipality. A phone call to the Court within the aforementioned eleven (11) day span could easily have avoided the December 2018 arrest of the Plaintiff and demonstrated the lack of probable cause for the arrest warrant to issue. Moreover, despite Sergeant Barboza and Officer Pelletier's reliance on what was communicated to dispatch by the R.O.N.C.O. unit at BCI, BCI's standard procedure is to instruct all police departments after-hours to double-check with the courts regarding whether a no-contact order is active prior to making an arrest. *See* **Ex. 9**, at p. 17:18-24 – 18:1-3; 19:4-11; *see also* **Ex. 10**. It does not appear this was done in this instance by the dispatcher, Officer Huber, Office Pelletier, or Sergeant Barboza prior to execution of the arrest warrant and the subsequent arrest of the Plaintiff on December 28, 2018.

Respectfully Submitted,
Defendant,

STATE OF RHODE ISLAND

BY:

**PETER F. NERONHA
ATTORNEY GENERAL**

*/s/ Alexander D. Schultheis*
Alexander D. Schultheis (#9534)
Special Assistant Attorney General
150 South Main Street
Providence, RI 02903
Tel: (401) 274-4400 Ext. 2021
Fax: (401) 222-2995
aschultheis@riag.ri.gov

**CERTIFICATE OF SERVICE**

I hereby certify that on this the 4th day of August, 2020, I caused a copy of the within DEFENDANT, STATE OF RHODE ISLAND'S RESPONSE TO PLAINTIFF, ANTONE SILVA'S MOTION FOR SUMMARY JUDGMENT to be filed through the ECF System upon the following attorneys of record:

Brian R. Cunha, Esq. (#4074)
BRIAN CUNHA & ASSOCIATES, P.C.
311 Pine Street
Fall River, MA 02720
Tel: (508) 675-9500
Fax: (508_ 679-6360
brian@briancunha.com

Marc DeSisto, Esq. (#2757)
Patrick K. Burns, Esq. (#10107)
DeSisto Law, LLC
60 Ship Street
Providence, RI 02903
Tel: (401) 272-4442
marc@desistolaw.com
pburns@desistolaw.com

*/s/ Alexander D. Schultheis*