# EXHIBIT 7

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

ANTONE SILVA
    *Plaintiff,*

v.                                      C.A. No.: 1-19-cv-429

STATE OF RHODE ISLAND,
TOWN OF TIVERTON,
PATRICK W. JONES, Individually
And as Chief of Police for the
Tiverton Police Department,
SERGEANT MICHAEL BARBOZA,
Town of Tiverton Police Officer,
Individually and in his official capacity.
    *Defendants.*

## DEFENDANT TOWN OF TIVERTON'S RESPONSE TO PLAINTIFF'S FIRST SET OF INTERROGATORIES

1. Please state the name, address, position, and department of the person completing these interrogatories.

**RESPONSE: Sgt. Michael Barboza and Chief Patrick Jones, Tiverton Police Department, 20 Industrial Way, Tiverton, RI 02878.**

2. State the date of first employment of Sergeant Michael Barboza in the Tiverton Police Department.

**RESPONSE: August 20, 2001.**

3. Please state the date of first employment of Patrick W. Jones and when he was appointed Chief of Police for the Tiverton Police Department.

**RESPONSE: September 14, 1992.**

4. State how Sergeant Michael Barboza became employed by the Tiverton Police Department, specifically stating the following:
    a) The number, nature, date, and content of all applications, resumes, or other forms which were filed by him as applicant for the position of police officer with the Town of Tiverton;
    b) The names, addresses, and rank of all persons who interviewed him as applicant for the position of police officer with the Town of Tiverton.

*Silva v. Tiverton*
*C.A. No. 1:19-cv-429*

    c) Whether he was required and/or did submit the names of references of his employment as a police officer with the Town of Tiverton and, if so, state the names and addresses of all reference supplied and which were investigated;
    d) Whether the Town of Tiverton required him to undergo any training or testing before employing him as a police officer and whether such training was physical or academic.

**RESPONSE: Objection. Defendant objects to the extent that this request is overly broad and unduly burdensome. Defendant objects to the production of any personal identifying information. Defendant objects to the extent that this is a "catch-all" request. Defendant objects based on Rhode Island Law Enforcement Officers' Bill of Rights, to providing information on the subject of open investigations, if any, and those that have been closed after findings of unfounded, not sustained and/or exonerated. Defendant objects to the extent that this request seeks information not compiled and/or kept in the ordinary course of business. Notwithstanding and without waiving the objections, see Defendant Town of Tiverton's Response to Plaintiff's First Request for Production of Documents, Response No. 1.**

    5. Please state all prior experience that Chief of Police Patrick W. Jones and Sergeant Michael Barboza had in law enforcement prior to becoming employees of the Town of Tiverton Police Department, including but not limited to the names, dates, and places of any courses or training in law enforcement which they had received as well as any physical, psychological, and academic training or testing to which they were subject prior to employment.

**RESPONSE: Objection. Defendant objects to the production of any personal identifying information. Defendant objects to the extent that this is a "catch-all" request. Defendant objects to the extent that this request seeks information not compiled and/or kept in the ordinary course of business. Notwithstanding and without waiving the objections, see Defendant Town of Tiverton's Response to Plaintiff's First Request for Production of Documents, Response Nos. 1 and 2.**

    6. State all testing required by the Town of Tiverton of applicants for the position of police officer, sergeant, and chief of police.

**RESPONSE: Objection. Defendant objects to the production of any personal identifying information. Defendant objects to the extent that this is a "catch-all" request. Defendant objects to the extent that this request seeks information not compiled and/or kept in the ordinary course of business. Notwithstanding and without waiving the objections, see Defendant Town of Tiverton's Response to Plaintiff's First Request for Production of Documents, Response Nos. 1 and 2.**

    7. State all guidelines or regulations of the Town of Tiverton in effect on the dates of each arrest of the Plaintiff regarding supervision of the police department by the Town of Tiverton and the persons, committees, or entity charged with the responsibility for the administration thereof.

*Silva v. Tiverton*
*C.A. No. 1:19-cv-429*

**RESPONSE: Objection. Defendant objects to the extent that this request is overly broad and unduly burdensome. Defendant objects based on relevance and proportionality. Defendant objects to the extent that this request seeks information not kept and/or compiled in the ordinary course of business. Notwithstanding and without waiving the objections, the Chief of Police shall be the chief executive of the police department, and he/she shall at all times enforce the rules and regulations for the government of the police. The Chief of Police reports directly to the Town Administrator.**

8. What supervision of the Chief of Police is there in his administration of the Police Department with respect to violation of no-contact orders and, if any, who is the official or entity responsible for such supervision?

**RESPONSE: Objection. Defendant objects to the extent that this request is overly broad and unduly burdensome. Defendant objects based on relevance and proportionality. Defendant objects to the extent that this request seeks information not kept and/or compiled in the ordinary course of business. Notwithstanding and without waiving the objections, see Response No. 7 above.**

9. Has Sergeant Michael Barboza been terminated, suspended, removed, laid off, reduced in rank, disciplined, or warned concerning any employment activity or conduct? If so, what such action has occurred, concerning what activity or conduct?

**RESPONSE: Objection. Defendant objects to the extent that this request is overly broad and unduly burdensome. Defendant objects based on relevance and proportionality. Defendant objects to the extent that this request seeks information not kept and/or compiled in the ordinary course of business. Notwithstanding and without waiving the objections, Sgt. Barboza has never been subject to any of these actions concerning any employment activity or conduct.**

10. State all action taken and regulations and organizational patterns and responsibilities delegated to insure that the constitutional rights of Plaintiff Antone Silva by the Town of Tiverton and its officers were not infringed by Sergeant Barboza. As to each, set forth the date of its enactment of resolution, the official or officials charges with the administration thereof, and the Town official responsible for the administration thereof.

**RESPONSE: Objection. Defendant objects to the extent that this request is overly broad and unduly burdensome. Defendant objects to the extent that this request seeks information not kept and/or compiled in the ordinary course of business. Notwithstanding and without waiving the objections,**

11. State the chain of command in effect from 2017 to present for the operations of the Town of Tiverton Police Department and whether the same was a formally enacted ordinance or regulation or conducted and organized on an informal basis.

*Silva v. Tiverton*
*C.A. No. 1:19-cv-429*

RESPONSE: Objection. Defendant objects to the extent that this request is overly broad and unduly burdensome. Defendant objects based on relevance and proportionality. Defendant objects to the extent that this request seeks information not kept and/or compiled in the ordinary course of business. Notwithstanding and without waiving the objections, as to the Department's chain of command:

1. The Chief of Police has full control over departmental activities, including budget and fiscal matters. In the absence of the Chief, the Captain will assume command of the department. In the absence of the Captain, command shall devolve to the next ranking officer and in the case of officers of equal rank, the senior officer in terms of time in rank, in accordance with applicable collective bargaining agreements.

2. Where personnel from different functions are involved in a single operation, the overall command shall rest with the ranking officer at the scene, unless another person has been specifically designated to be in charge.

3. In normal day-to-day operations, the ranking officer in charge of a shift, squad, or unit shall be in command of that shift, squad or unit. The Tiverton Police Department utilizes the following rank structure for sworn department members:

    a. Chief of Police

    b. Captain

    c. Lieutenant (Patrol Lieutenant, Detective Lieutenant)

    d. Sergeant (Patrol Sergeant, Detective Sergeant)

    e. Corporal

    f. Patrol Officer/Detective

    g. Probationary Patrol Officer

    h. Reserve Police Officer

4. Each organizational component shall be under the direct command of only one supervisor.

5. Every employee shall be accountable to only one immediate supervisor at any given time.

   12. Has any person ever filed a Complaint, suit, cause of action, or commenced an inquiry or investigation concerning Sergeant Michael Barboza which involved false arrest, malicious prosecution, abuse of authority, or excessive use of force in the performance of any official duty? If so, please state:

*Silva v. Tiverton*
C.A. No. 1:19-cv-429

> a) The nature of the incident, investigation, cause of action, suit, or inquiry;
> b) The place and date on which it occurred;
> c) The names and addresses of all persons involved; and
> d) The administration or court term and number of any such incident and the result thereof.

**RESPONSE: Objection. Defendant objects to the extent that this request is overly broad and unduly burdensome. Defendant objects to the production of any personal identifying information. Defendant objects based on Rhode Island Law Enforcement Officers' Bill of Rights, to providing information on the subject of open investigations, if any, and those that have been closed after findings of unfounded, not sustained and/or exonerated. Defendant objects to the extent that this request seeks information not compiled and/or kept in the ordinary course of business. Notwithstanding and without waiving the objections, no such complaints, suits, causes of action, or inquiries have ever been commenced against Sgt. Barboza.**

> 13. Identify any and all documents constituting, containing, or concerning Sergeant Michael Barboza's service record, including all evaluations of performance.

**RESPONSE: Objection. Defendant objects to the extent that this request is overly broad and unduly burdensome. Defendant objects to the production of any personal identifying information. Defendant objects to the extent that this is a "catch-all" request. Defendant objects based on Rhode Island Law Enforcement Officers' Bill of Rights, to providing information on the subject of open investigations, if any, and those that have been closed after findings of unfounded, not sustained and/or exonerated. Defendant objects to the extent that this request seeks information not compiled and/or kept in the ordinary course of business. Notwithstanding and without waiving the objections, see Defendant Town of Tiverton's Response to Plaintiff's First Request for Production of Documents, Response No. 1.**

> 14. Identify any and all documents, without limitation, reports, correspondence, notes, diaries, logs, and memoranda which reflect, comment upon, or in any way refer or relate to the investigation by the Town of Tiverton or the Police Department of the Plaintiff's allegations of Sergeant Michael Barboza's conduct on the dates of his arrests.

**RESPONSE: Objection. Defendant objects to the extent that this request is overly broad and unduly burdensome. Defendant objects to the extent that this is a "catch-all" request. Defendant objects to the extent that this request seeks information not compiled and/or kept in the ordinary course of business. Notwithstanding and without waiving the objections, see Defendant Town of Tiverton's Response to Plaintiff's First Request for Production of Documents, Response Nos. 13 and 14.**

> 15. Please state the names, present addresses, and rank of each officer of the Town of Tiverton Police Department who participated in Plaintiff's arrests on September 8, 2018 and December 28, 2018.

*Silva v. Tiverton*
C.A. No. 1:19-cv-429

RESPONSE: Objection. Defendant objects to the extent that this request is overly broad and unduly burdensome. Defendant objects to the extent that this request seeks information not compiled and/or kept in the ordinary course of business. Notwithstanding and without waiving the objections:

On 09/08/18 at approximately 2226 hours, Officer Pelletier was on a Twin River Casino detail when he overheard security being requested near the restaurant for a possible domestic in progress.

Upon arrival he observed a male and female who were extremely intoxicated speaking with security. Officer Pelletier obtained identification from both parties and they were identified as Antone Silva and Darcie Silvia. Darcie explained that Antone was acting rude in the restaurant to the waitress and bus boys and she decided that she wanted to leave. Darcie then got up from the chair and attempted to leave the restaurant with Antone following and they were yelling at each other.

Officer Pelletier ran both parties and checked for any active no contact orders at which time dispatcher Leonardo advised that she contacted RONCO and there was an active no contact order with Darcie being the protected party. Antone and Darcie were advised by security that they would be trespassed from the property for sixty days and Officer Pelletier escorted Antone to the front of the casino.

Antone was advised that he currently was in violation of his no contact order and he was being placed under arrest. Officer Pelletier then placed Antone in handcuffs and secured him in Officer Valzovano's cruiser #41. Officer Valzovano transported Antone back to police HQ for processing and Officer Pelletier followed behind.

Once at police HQ, Antone was booked, finger printed, photographed, given a phone call and secured into cell #2.

On 12/08/2018 at 2124 hours, Ptlm. Huber responded to ▮▮▮▮▮ for the report of a Breaking and Entering. Prior to arrival dispatch advised responding units that the reporting party, Antone J. Silva, stated that Darcie Silvia had broken the back door to his house and left the scene in a black ▮▮▮▮▮ orth on ▮▮▮▮▮ towards Fall River. Also, dispatch advised units that there was an active No Contact/Protection Order between Darcie Silvia (Protected Party) and Antone Silva. After extensively checking the area for the suspect vehicle, Ptlm. Huber responded to ▮▮▮▮▮ to speak with Silva.

Upon contact with Silva, Ptlm. Huber detected the strong odor of an alcoholic beverage emanating from his breath as he spoke with him. Silva then advised him that he had been drinking with his work buddies earlier in the evening. Ptlm. Huber observed several steaks on a skillet, large sums of empty beer bottles, and the kitchen to be in disarray. He observed the back (kitchen) entrance door to be forcefully opened with the dead bolt lock in the locked position and the dead bolt appeared to be forced through the door frame. The door frame had been broken off of the wall and assorted pieces were scattered across the kitchen floor. Ptlm. Brillon later arrived on scene and photographed the damage to the

*Silva v. Tiverton*
C.A. No. 1:19-cv-429

doorway using cruiser #47's camera. It should be noted, while Ptlm. Brillon and Ptlm. Huber observed the damage to the door frame, there did not appear to be any recent/fresh damage to the door as the scene appeared to be staged. Silva advised Ptlm. Huber that he was cooking dinner when his girlfriend, Darcie Silvia, showed up to his home, saw him inside the kitchen and attempted to make entrance into the home via the back door. Silva stated that the door frame broke and Darcie Silvia immediately left the scene in her vehicle, a black ▮▮▮▮▮▮▮▮

While speaking with Silva, Ptlm. Huber observed a surveillance camera outside of the damaged doorway. Ptlm. Huber asked Silva if he could provide him with the video surveillance of outside of the doorway. It should be noted that Silva stated that Darcie Silvia arrived around 9 P.M., knocked his door down and immediately fled from the scene as she was in a hurry. The camera was angled in the direction of the driveway and steps leaving the back deck area. While observing the video surveillance, Ptlm. Huber observed a female whom he was able to positively identify from previous contacts to in fact be Darcie Silvia exit the home around 2100 hours (9 P.M.). While viewing the footage Ptlm. Huber was unable to observe the door be tampered with. He observed Darcie walk down the back steps and walk in the direction of her vehicle in a 3-5 second clip. Darcie had a calm demeanor, and appeared to be leaving the home without incident. It appeared that Darcie did not display any actions to make Ptlm. Huber believe that she had damaged any property. At this time Silva was unable to provide officers a video of Darcie arriving at the home. On 12/09/2018, Ptlm. Huber returned to ▮▮▮▮▮▮▮▮ to obtain a statement from Silva. At this time, he showed Ptlm. Huber a video of Darcie arriving at his home at around 1800 (6 P.M.) hours and leave the home around 2100 (9 P.M.) hours.

It should be noted that while speaking with Silva he spoke with a heavily slurred speech. While asking questions he would pause for long periods of time and officers would repeat each question numerous times before he would respond with an answer. Due to Silva's high level of intoxication, Ptlm. Huber was unable to obtain a statement. Throughout his contact with Silva, Silva was unable to provide an exact timeline of events and his story changed on numerous occasions.

Silva later contacted HQ and provided Ptlm. Huber with an address for where Darcie was staying in Fall River. Fall River PD later made contact with Darcie and advised her to contact HQ. Back at HQ, Ptlm. Huber attempted to make contact with Darcie Silvia via telephone and left a voicemail for her to contact HQ. At 2300 hours Darcie Silvia contacted Ptlm. Huber via telephone. Darcie stated that she arrived at Silva's home around 1800 hours (6 P.M.). Darcie stated that she had purchased steaks earlier in the evening and brought them over to Silva's to cook. She said that she and Silva were drinking with one another just "hanging out." Darcie advised Ptlm. Huber that Silva was highly intoxicated and became extremely confrontational with her. She stated that around 2100 hours (9 P.M.) Silva began to become more and more angry toward her. At this time she decided to leave before things escalated. When questioned on the doorway, Darcie stated that the back door had been broken for several weeks/months. Darcie stated that Antone Silva had broken the door one day when he was intoxicated.

*Silva v. Tiverton*
*C.A. No. 1:19-cv-429*

On 12/08/2018, Ptlm. Huber advised Sgt. Palagi of his findings. He advised Ptlm. Huber to further investigate the incident and attempt to obtain statements from both parties.

On 12/09/2018, Ptlm. Huber returned to ▇▇▇▇▇▇▇▇▇▇▇▇ to obtain a statement from Silva. Again, Silva was highly intoxicated and displayed a heavily slurred speech as he spoke with Ptlm. Huber. Ptlm. Huber began to question Silva on the story he provided the evening prior. At this time, he showed Ptlm. Huber a video of Darcie arriving at his home at around 1800 hours (6 P.M.) and leave the home around 2100 hours (9 P.M.). Ptlm. Huber again questioned Silva on when Darcie arrived at his home. Silva stated that she did in fact arrive at his home around 1800 hours (6 P.M.). Silva stated they were drinking together and cooking food (steaks). He said due to their past they have been trying to work on their issues. He stated that they began to argue, and he told her to leave, which she did. Ptlm. Huber then questioned him on how the door was damaged, to which he stated, "I don't want to get anyone in trouble." Ptlm. Huber again questioned Silva on how the door was damaged, to which he paused for a long period of time (avoiding eye contact) and stated, "Darcie broke it." Ptlm. Huber then obtained a written statement in which Silva wrote "Darcie knocked my door down after told her too leave," showing that he was with Darcie on the evening of 12/08/2018 between 1800-2100 hours. After obtaining a statement from Silva, he thanked me for my time and I cleared, returning to patrol.

On 12/10/2018, Ptlm. Huber was contacted at HQ via telephone by Darcie. Darcie advised him that she was told by her lawyer not to come to HQ to provide a statement. Darcie again provided verbal statements consistent with the story that she provided Ptlm. Huber on 12/08/2018.

On 12/10/2018, Ptlm. Advised Sgt. Rossi of the details and findings of the above incident. Sgt. Rossi advised him to draft a warrant for Antone Silva.

Based on the above facts and circumstances, a warrant was drafted for Antone Silva for Violation of a No Contact Order.

On 12/28/2018 at approximately 2324 hours, Detective Pelletier was working a casino detail when he observed a male known to him from prior contacts as Antone Silva inside the casino. Det. Pelletier had dispatch ran a warrant check on Silva, at which time dispatch confirmed that Silva had an active affidavit and arrest warrant from the Town of Tiverton for violation of a no contact order. Det. Pelletier requested another unit and approached Silva and advised him that he was going to be escorted from the casino to the front lobby due to him having a warrant.

Silva was intoxicated and stated that he did not have a warrant and that the Tiverton Police gets enjoyment out of arresting him inside the casino. Det. Pelletier advised him that it was confirmed that he had an active warrant from a prior incident and that he would need to leave the casino with him. Silva was escorted to the front lobby, where Det. Pelletier met Officer Parrillo. Det. Pelletier then placed Silva in handcuffs, patted him down and placed him in the rear of Officer Parrillo's cruiser. Officer Parrillo then transported Silva back to police HQ where he and Officer Leduc processed him. Silva was

*Silva v. Tiverton*
*C.A. No. 1:19-cv-429*

photographed, finger printed and given multiple phone calls. Silva was then placed into cell #3.

16. Please state who the officer was who made the arrests of Plaintiff on September 8, 2018 and December 28, 2018 and the basis of same.

**RESPONSE: See Response No. 15 above.**

17. Please state whether Sergeant Michael Barboza, who made the arrest on September 8, 2018, told the Plaintiff why he was being arrested and describe in detail all discussions between Sergeant Barboza and the Plaintiff on said date.

**RESPONSE: Objection. Defendant objects to the extent that this request is overly broad and unduly burdensome. Defendant objects to the extent that this request seeks information not compiled and/or kept in the ordinary course of business. Notwithstanding and without waiving the objections, see Response No. 15 above.**

18. Please state whether Sergeant Michael Barboza, who made the arrest on December 28, 2018, told the Plaintiff why he was being arrested and describe in detail all discussions between Sergeant Barboza and the Plaintiff on said date.

**RESPONSE: Objection. Defendant objects to the extent that this request is overly broad and unduly burdensome. Defendant objects to the extent that this request seeks information not compiled and/or kept in the ordinary course of business. Notwithstanding and without waiving the objections, see Response No. 15 above.**

19. Please state any comments made by the Plaintiff to the officer(s) who arrested the Plaintiff on September 8, 2018 and December 28, 2018 with regard to the no-contact order having been vacated.

**RESPONSE: See Response No. 15 above.**

20. State the factual and legal basis for your claim that any injuries or damages suffered by the Plaintiff were due to the Plaintiff's own conduct or behavior, and identify each person and document relied on for such claim.

**RESPONSE: Objection. This request refers to affirmative defenses interposed by defense counsel and a response to this request calls for legal conclusions, which fall outside of the scope of discovery. Notwithstanding and without waiving the objections, see the responsive information contained within the materials provided in these Interrogatories and Defendant Town of Tiverton's Response to Plaintiff's First Request for Production of Documents, and any supplemental responses and materials relating to same.**

21. Describe in detail the methods used to restrain Plaintiff during or after the arrests on September 8, 2018 and December 28, 2018, stating why such restraints were deemed necessary and setting forth the following:

*Silva v. Tiverton*
C.A. No. 1:19-cv-429

    a) The name and address of each person who applied those restraints;
    b) The time when they were applied;
    c) The time where they were removed; and
    d) The names and addresses of the persons who removed them.

**RESPONSE: Objection. Defendant objects to the extent that this request is overly broad and unduly burdensome. Defendant objects to the extent that this request seeks information not compiled and/or kept in the ordinary course of business. Notwithstanding and without waiving the objections, see Response No. 15 above.**

22. Please indicate whether a record was made of Plaintiff's detention at the detention facility and, if so, state:
    a) The name and address of the person by whom the record was made;
    b) The name and address of the present custodian of the record;
    c) The number or other means of identification assigned to the record for recordkeeping purposes.

**RESPONSE: Objection. Defendant objects to the extent that this request is overly broad and unduly burdensome. Defendant objects to the extent that this request seeks information not compiled and/or kept in the ordinary course of business. Notwithstanding and without waiving the objections, see Response No. 15 above.**

23. Please state whether the Plaintiff was placed in a cell or other place of confinement within the detention facility and, if so, state:
    a) A description of the place of confinement or cell;
    b) The name and address of each person occupying the same cell or place of confinement with Plaintiff and the offenses each was charged with;
    c) The date and time Plaintiff was placed in the cell or place of confinement;
    d) The date and time Plaintiff was released from the detention facility.

**RESPONSE: Objection. Defendant objects to the extent that this request is overly broad and unduly burdensome. Defendant objects to the extent that this request seeks information not compiled and/or kept in the ordinary course of business. Notwithstanding and without waiving the objections, see Response No. 15 above.**

24. Please state whether the Town of Tiverton is insured under any policy of insurance against liability for this cause of action and, if so, state:
    a) The name and address of the insurance company;
    b) The named holder of the policy;
    c) The limits of liability stated in the policy;
    d) Whether the insurer contests such coverage; and
    e) Who paid the premiums therefor.

**RESPONSE: Objection. Defendant objects to the extent that this request is overly broad and unduly burdensome. Defendant objects to the extent that this request seeks information not compiled and/or kept in the ordinary course of business. Notwithstanding**

*Silva v. Tiverton*
*C.A. No. 1:19-cv-429*

and without waiving the objections, see Defendant Town of Tiverton's Response to Plaintiff's First Request for Production of Documents, Response No. 21.

25. Please state in detail all communication made by Sergeant Michael Barboza at the time of Plaintiff's arrests on the above dates, to whom he spoke, and the substance, in detail, of all the communications.

**RESPONSE:** Objection. Defendant objects to the extent that this request is overly broad and unduly burdensome. Defendant objects to the extent that this request seeks information not compiled and/or kept in the ordinary course of business. Notwithstanding and without waiving the objections, Sgt. Barboza made no communications at the time of those arrests.

*I am signing this Response to Interrogatories in my capacity as Chief of Police of the Town of Tiverton. I do not have personal knowledge on the subject of all of the Responses herein. Rather, I am signing these responses, which have been compiled using information obtained from the Town of Tiverton and/or provided by agents and/or employees of the Town of Tiverton and/or its insurer and/or its legal counsel.*

_____
Patrick W. Jones, Chief of Police

**STATE OF RHODE ISLAND**
**COUNTY OF** Newport

*Subscribed and sworn to before me on this* 3rd *day of* April *2020.*

_____
NOTARY PUBLIC
My Commission Expires 06/18/22

KAYLA SILVA
NOTARY PUBLIC OF RHODE ISLAND
My Commission Expires 6/18/2022

*Silva v. Tiverton*
*C.A. No. 1:19-cv-429*

                    As to Objections,
                    Defendants,
                    By their Attorneys,

                    */s/ Marc DeSisto*
                    Marc DeSisto, Esq. (#2757)
                    */s/ Patrick K. Burns*
                    Patrick K. Burns, Esq. (#10107)
                    DeSisto Law LLC
                    60 Ship Street
                    Providence, RI 02903
                    (401) 272-4442
                    marc@desistolaw.com
                    pburns@desistolaw.com

## CERTIFICATION OF SERVICE

I hereby certify, that on this 3rd day of April 2020, a true and accurate copy of the within was emailed to:

Brian R. Cunha, Esq.
brian@briancunha.com

Andrea Shea, Esq.
ashea@riag.ri.gov

Alexander David Schultheis, Esq.
aschultheis@riag.ri.gov

                    */s/Patrick K. Burns*