## UNITED STATES DISTRICT COURT
## DISTRICT OF RHODE ISLAND

| | |
|---|---|
| ANTONE SILVA, | : |
| *Plaintiff*, | : |
| | : |
| v. | :    C.A. No.: 1:19-cv-00429-MSM-LDA |
| | : |
| STATE OF RHODE ISLAND, TOWN | : |
| OF TIVERTON, PATRICK W. JONES,| : |
| Individually and as Chief of Police for | : |
| The Tiverton Police Department, | : |
| SERGEANT MICHAEL BARBOZA, | : |
| JOSHUA PELLETIER and RYAN | : |
| HUBER, Town of Tiverton Police | : |
| Officers, Individually and in their | : |
| official capacity, | : |
| *Defendants*. | : |
| | : |

### DEFENDANT, STATE OF RHODE ISLAND'S LOCAL RULE 56(a)(3) STATEMENT OF UNDISPUTED FACTS IN SUPPORT OF ITS OBJECTION TO PLAINTIFF, ANTONE SILVA'S MOTION FOR SUMMARY JUDGMENT

NOW COMES, the Defendant, State of Rhode Island ("State"), and, pursuant to Local Rule 56(a)(3) of the United States District Court for the District of Rhode Island, hereby submits the following Statement of Undisputed Facts in Response to Plaintiff, Antone Silva's ("Plaintiff") Motion for Summary Judgment.[1] The State asserts that the following facts are undisputed in this matter, and necessitate the denial of the Plaintiff's Motion for Summary Judgment as it pertains to the singular count of negligence against the State.[2]

[1] Because the Plaintiff did not file a Statement of Undisputed Facts, the State hereby files its own Statement of Undisputed Facts, rather than a Statement of Disputed Facts.

[2] As the State notes in its Memorandum of Law in support of its Response in Opposition to the Plaintiff's Motion for Summary Judgment, it is not contesting its

## UNDISPUTED FACTS

1. On April 14, 2018, the Plaintiff was arrested by Tiverton Police and was charged with domestic simple assault on his girlfriend, Darcie LaPointe. *See* **Exhibit 1**, attached hereto, Plaintiff's Answers to State's Interrogatories, Answer to Interrogatory No. 19.

2. As a result of the April 14, 2018 arrest, a No-Contact Order (the "First No-Contact Order") was issued against the Plaintiff. *See* **Ex. 1**, Answer to Interrogatory No. 19.

3. On June 21, 2018, the underlying case regarding the First No-Contact Order was dismissed by the Newport County District Court. *See* **Ex. 1**, Answer to Interrogatory No. 19.

4. Subsequently, on September 8, 2018, the Plaintiff was arrested by Defendant, Joshua Pelletier ("Officer Pelletier") of the Tiverton Police at the Tiverton Twin River Casino for allegedly violating the First No-Contact Order. *See* **Ex. 1**, Answer to Interrogatory No. 3; *see also* **Exhibit 2**, attached hereto, Deposition Transcript of Sergeant Michael Barboza ("Sergeant Barboza"), at ps. 8:15-24 – 9:1; 10:2-13; **Exhibit 3**, attached hereto, Deposition Transcript of Officer Pelletier, at p. 12:14-20.

5. Upon making the arrest of the Plaintiff on September 8, 2018, Officer Pelletier did not speak with a member of the Tiverton Police Department and was not

---

liability for the Plaintiff's first arrest in September 2018. However, it is contesting its liability for the Plaintiff's second arrest in December 2018.

advised that the First No-Contact Order for which he was arresting Plaintiff had been previously dismissed. *See* **Ex. 3**, at p. 13:20-24 – 14:1-6.

6. As a result of the September 8, 2018 arrest, a second no-contact order was entered against the Plaintiff on September 10, 2018 (the "Second No-Contact Order"). *See* **Exhibit 4**, attached hereto, Deposition Transcript of Maureen Palazzo, at p. 26:20-24.

7. The First No-Contact Order entered on April 14, 2018 was subsequently terminated on September 10, 2018. *See* **Ex. 4**, at p. 30:19-23.

8. The Second No-Contact Order issued on September 10, 2018 was also terminated the same day. *See* **Ex. 4**, at p. 23:23-24 – 24:1-3.

9. The Second No-Contact Order was marked by the Court as being accepted into BCI's computerized criminal history system on September 11, 2018. *See* **Ex. 4**, at p. 24:5-8.

10. Additionally, on September 10, 2018, an electronic J-LINKS notification update was sent to the Tiverton Police Department, notifying them of the dismissal of the Second No-Contact Order. *See* **Ex. 4**, at p. 24:16-22; s*ee also* **Exhibit 5**, attached hereto, Court Docket from Case No. 21-2018-01838; **Exhibit 6**, attached hereto, Deposition Transcript of Chief Patrick Jones ("Chief Jones"), at p. 49:14-23.

11. J-LINKS is a court connect system that links the police department with the court system. *See* **Ex. 6**, at p. 12:19-21.

12. If a J-LINKS update is made to the court's system regarding a protection order being removed and terminated, that information would be received by the prosecution officer of the respective police department. *See* **Ex. 6**, at p. 14:24 – 15:1-13.

13. It is undisputed that Sergeant Michael Barboza ("Sergeant Barboza") is the prosecution officer for the Town of Tiverton. *See* **Ex. 6**, at p. 13:15-18; *see also* **Ex. 2,** at p. 6:9-20.

14. Sergeant Barboza would be the individual who would be aware of the termination of a No-Contact Order for a Tiverton case as the prosecuting officer for Tiverton. *See* **Ex. 6**, at ps. 16:19-24; 17:1-3; 71:14-22.

15. Sergeant Barboza was aware of the termination of the April 2018 No-Contact Order, along with the dismissal of the underlying case, on June 21, 2018. *See* **Ex. 2**, at p. 17:17-22; *see also* **Ex. 6**, at p. 15:9-13.

16. Sergeant Barboza was also in court on September 10, 2018 and dismissed the Plaintiff's second arrest from September 8, 2018, which was subsequently ordered to be dismissed by the Newport County District Court. *See* **Ex. 2**, at ps. 12:15-24; 13:1-12; 48:5-11.

17. Sergeant Barboza testified at his deposition that after a case is dismissed, it is a custom and practice of the Tiverton Police Department to go back to the police department and enter information into the department's computer system regarding such a dismissal by entering the arrest number and closing out the arrest. *See* **Ex. 2**, at p. 19:8-13.

18. Information regarding such a dismissal or the closing out of an arrest is available within the Tiverton Police Department's computer system. *See* **Ex. 2**, at p. 19:14-17; *see also* **Ex. 6**, at p. 47:17-22.

19. On September 10, 2018, Sergeant Barboza testified that he returned to the Tiverton Police Station to enter the dismissal of the September 10, 2018 arrest matter that same day and closed out the arrest in the Tiverton Police Department's system. *See* **Ex. 2**, at p. 56:4-12.

20. Sergeant Barboza also testified that he spoke to the detectives regarding the dismissal, specifically indicating that the Plaintiff's No-Contact Order from April 2018 was not active anymore. *See* **Ex. 2**, at p. 56:4-12.

21. On September 10, 2018, Officer Pelletier himself was a detective in the Tiverton Police Department, and thus would likely have been told about the dismissal of the Plaintiff's No-Contact Order by Sergeant Barboza. *See* **Ex. 3**, at p. 8:14-24 – 9:1-4.

22. Just a few months later, on December 8, 2018, Officer Huber of the Tiverton Police Department went to the Plaintiff's house due to a report of a breaking and entering. *See* **Exhibit 7**, attached hereto, Town's Answers to Plaintiff's Interrogatories, Answer to Interrogatory No. 15.

23. Officer Pelletier, who ultimately prepared the December 2018 police report, indicated in said report for his December 10, 2018 narrative that "dispatch advised units that there was an active No Contact/Protection Order between Darcie Silva (Protected Party) and Antone Silva." *See* **Ex. 3**, at p. 38:5-16. *see*

*also* **Exhibit 8**, attached hereto, Town's Responses to Plaintiff's Requests for Production of Documents, Response No. 14, at Bates Stamp No. Tiverton-RFP-000608.

24. Officer Pelletier testified that, at the time of the Plaintiff's arrest, he was not aware of the fact that this active no-contact order was the Second No-Contact Order that was previously dismissed by the Court, which was specifically a Tiverton case. *See* **Ex. 3**, at 39:7-17.

25. Officer Pelletier also testified that ordinarily dispatch does not tell officers the city, town, or municipality from where an active No-Contact Order originates. *See* **Ex. 3**, at p. 39:18-24 – 40:1.

26. Notwithstanding this statement, the Police Report, which Officer Pelletier himself authored, specifically notes that the active No-Contact Order upon which the Plaintiff's December 2018 arrest was based was the Second No-Contact Order, a Tiverton case, and, as noted above, for which a J-LINKS electronic notification update was sent to the Tiverton Police Department on September 10, 2018. *See* **Ex. 2**, at p. 56:4-12; **Ex. 3**, at p. 34:9-18; **Ex. 6**, at p. 49:14-23; **Ex. 8**, at Bates Stamp No. Tiverton-RFP-000633.

27. Based upon the police report narrative authored by Officer Pelletier on December 8, 2018, on December 19, 2018, Sergeant Barboza signed an arrest warrant for the Plaintiff's arrest for alleged violation of the Second No-Contact Order. *See* **Ex. 2**, at ps. 9:21-24 – 10:1.

28. Sergeant Barboza testified that once the warrant was left for his review and signature, he believed that the responding officers "followed all the steps. They called RONCO. RONCO confirmed…the protection order [was] active." *See* **Ex. 2**, at p. 66:10-12.

29. Eleven (11) days elapsed between Officers Huber and Pelletier first learning of the existence of the active no-contact order and their subsequent drafting of the arrest warrant and its execution by Sergeant Barboza. *See* **Ex. 2**, at p. 9:21-24 – 10:1.

30. Sergeant Barboza testified that he did not speak with any officers in the course of reviewing or presenting the warrant. *See* **Ex. 2**, at p. 28:21 – 29:4; 66:7-16, 66:22-24 – 67:1-2.

31. The information regarding the dismissal of the Second No-Contact Order was thus available in the Tiverton Police Department's system at the time of the Plaintiff's December 2018 arrest *See* **Ex. 2**, at p. 56:4-12.

32. Based upon the police report from December 8, 2018, an arrest warrant was signed by Sergeant Barboza against the Plaintiff for alleged violation of a No-Contact Order. *See* **Ex. 2**, at p. 9:21-24 – 10:1.

33. Subsequently, on December 28, 2018, the Plaintiff was arrested for an alleged violation of a No-Contact Order. *See* **Ex. 1**, Answer to Interrogatory No. 19.

34. According to the Bureau of Criminal Identification's  own training manual instructions, anytime a police department calls BCI after-hours to verify the active state of a No-Contact Order, the police department is always instructed

to double-check this with the Courts to verify the accuracy of whether a No-Contact Order is active or not. *See* **Exhibit 9**, attached hereto, Deposition Transcript of Edward Troiano, at p. 17:18-24 – 18:1-3; 19:4-11; *see also* **Exhibit 10**, attached hereto, BCI Training Instructions.

35. Despite Officer Pelletier's testimony that dispatch contacted "RONCO" at BCI on December 8, 2018 to confirm the active status of the Second No-Contact Order against the Plaintiff, it appears that dispatch did not contact the Courts at any time to confirm and double-check whether the Second No-Contact Order was active or not, as BCI would ordinarily instruct them to do. *See* **Ex. 3**, at p. 38:5-16; 39:18-24 – 40:1.

Respectfully Submitted,
Defendant,

STATE OF RHODE ISLAND

BY:

**PETER F. NERONHA**
**ATTORNEY GENERAL**

*/s/ Alexander D. Schultheis*
Alexander D. Schultheis (#9534)
Special Assistant Attorney General
150 South Main Street
Providence, RI 02903
Tel: (401) 274-4400 Ext. 2021
Fax: (401) 222-2995
aschultheis@riag.ri.gov

## CERTIFICATE OF SERVICE

I hereby certify that on this the 4th day of August, 2020, I caused a copy of the within DEFENDANT, STATE OF RHODE ISLAND'S LOCAL RULE 56(a)(3) STATEMENT OF UNDISPUTED FACTS to be filed through the ECF System upon the following attorneys of record:

Brian R. Cunha, Esq. (#4074)
BRIAN CUNHA & ASSOCIATES, P.C.
311 Pine Street
Fall River, MA 02720
Tel: (508) 675-9500
Fax: (508_ 679-6360
brian@briancunha.com

Marc DeSisto, Esq. (#2757)
Patrick K. Burns, Esq. (#10107)
DeSisto Law, LLC
60 Ship Street
Providence, RI 02903
Tel: (401) 272-4442
marc@desistolaw.com
pburns@desistolaw.com

*/s/ Alexander D. Schultheis*