UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

ANTONE SILVA,                                              :
                    *Plaintiff*                           :
v.                                                        : C.A. No. 1:19-cv-00429-WES-LDA
                                                          :
STATE OF RHODE ISLAND, TOWN OF TIVERTON,                  :
PATRICK W. JONES, Individually and as                     :
Chief of Police for the Tiverton Police Department,       :
SERGEANT MICHAEL BARBOZA, Town of Tiverton                :
Police Officer, Individually and in his official capacity, :
                    *Defendants*                          :
_____          :

**PLAINTIFF'S RESPONSES TO TIVERTON DEFENDANTS'**
**STATEMENT OF UNDISPUTED FACTS**

A.      *Plaintiff's arrest on April 14, 2018*

1.      On April 14, 2018 at approximately 7:47 P.M., Plaintiff was arrested by the Tiverton Police Department for domestic simple assault and battery against his girlfriend, Darcie Silvia ("Silvia"). Exhibit A, Tiverton Police Department Arrest Report for Arrest No. 18-135-AR, at 2.

**RESPONSE**

        Undisputed.

2.      The same day, a no contact order against Plaintiff, with Silvia as the protected party, was drafted. Exhibit B, No Contact Order dated April 14, 2018.

**RESPONSE**

        Undisputed.

3.      The information pertaining to this no contact order was entered by a clerk at the Second Division District Court ("District Court") into the Rhode Island Judiciary's Odyssey system on or about April 18, 2018. Exhibit C, Defendant, State of Rhode Island's Answers to Plaintiff, Antone Silva's Interrogatories, at Response No. 6.

**RESPONSE**

        Undisputed.

4.      An employee of the Rhode Island Department of Attorney General ("Attorney General") then accepted this information into the State's Bureau of Criminal Investigation ("BCI") system the same day. Id. at Response No. 7.

**RESPONSE**

      Undisputed.

5.      The Town later dismissed the no contact order on June 21, 2018. Exhibit D, Dismissal Under Criminal Rule 48(a) dated June 21, 2018.

**RESPONSE**

      Undisputed.

6.      The same day, a District Court clerk entered this dismissal into the District Court's Odyssey computer system, on a screen entitled "Case Events." Exhibit E, June 17, 2020 Deposition Transcript of Maureen Palazzo, at 15:24-16:10.

**RESPONSE**

      Undisputed.

7.      However, the District Court clerk did not enter the information into the matter's "Protective Order" tab, another section contained within the Odyssey system where the termination of a no contact order is documented. Id. at 16:17-17:4, 19:3-18.

**RESPONSE**

      Undisputed.

8.      After June 21, 2018, therefore, the "Case Events" section indicated that Plaintiff's no contact order was dismissed, but the "Protective Order" tab did not. Id. at 20:3-6.

**RESPONSE**

      Undisputed.

9.      The State's RONCO system only receives information contained in the "Protective Order" tab, not the "Case Events" screen. Id. at 20:7-15.

**RESPONSE**

      Undisputed.

B.      *Plaintiff's arrest on September 8, 2018*

10.     On September 8, 2018 at approximately 10:26 P.M., while working a security detail at Twin River Casino in Tiverton, Pelletier overheard a request for assistance with a possible domestic issue near one of the casino's restaurants. Exhibit F, Defendant Town of Tiverton's Response to Plaintiff's First Set of Interrogatories, at Response No. 15.

**<u>RESPONSE</u>**

        Disputed as to the factual content and Pelletier's response.

11.     Upon reaching the area, Pelletier saw Plaintiff and Silvia, both of whom appeared to be intoxicated, speaking with casino security. Id.

**<u>RESPONSE</u>**

        Disputed. Neither the Plaintiff or Silvia were intoxicated.

12.     Silvia informed Pelletier that Plaintiff had been acting rude to the restaurant staff, prompting her to decide to leave, and that Plaintiff had followed her out of the restaurant. Id.

**<u>RESPONSE</u>**

        Disputed as to what Darcie Silvia advised Pelletier.

13.     Pelletier then called dispatch and requested a warrant check and an order check for both parties. Id.; Exhibit G, June 3, 2020 Deposition Transcript of Joshua Pelletier, at 14:6-9.

**<u>RESPONSE</u>**

        Undisputed.

14.     Dispatch performed the checks, which produced a RONCO record displaying a no contact order with a date issued of April 16, 2018, an expiration date of January 1, 2999, and Silvia as the protected party. Exhibit H, Tiverton Police Department Specific Query Reports dated September 8, 2018.[1]

---

[1] The protected party in the Specific Query Reports is listed as "Darcie Lapointe" rather than "Darcie Silvia." Exhibit H. The Tiverton Defendants submit, however, that this report references the same individual identified as "Darcie Silvia" throughout this Memorandum. See Memorandum of Law in Support of Plaintiff's Motion for Partial Summary Judgment, Docket at #30-1, at 2 (referring to "Darcie Silvia a/k/a Darcie Lapointe").

**RESPONSE**

Undisputed.

15.    Dispatch also contacted RONCO at this time, and RONCO confirmed that the no contact order was active. Exhibit I, Tiverton Police Department Call Log for Call Number 18-17130.

**RESPONSE**

Undisputed.

16.    Dispatch then advised Pelletier of the active no contact order, confirmed through RONCO. Exhibit F at Response No. 15.

**RESPONSE**

Undisputed.

17.    Pelletier testified that this process was "usually what [the police department's] protocol is." Exhibit G at 14:6.

**RESPONSE**

Undisputed.

18.    Pelletier escorted Plaintiff to the front of the casino, advised him that he was in violation of an active no contact order, and placed him under arrest. Exhibit F at Response No. 15.

**RESPONSE**

Undisputed.

19.    Patrolman Marco Valzovano transported Plaintiff to the police station, where Plaintiff was booked, fingerprinted, photographed, and placed in a holding cell. Id.

**RESPONSE**

Undisputed.

20.    On September 10, 2018, Plaintiff appeared in the District Court for his arraignment. See Exhibit J, June 2, 2020 Deposition Transcript of Michael Barboza, at 12:16-19.

**RESPONSE**

Undisputed.

21.     As Barboza, the Tiverton Police Department's prosecution officer, prepared the necessary paperwork for submission, he had an "inkling," based on previous interactions with the Town Solicitor, that the no contact order that Plaintiff purportedly violated had previously been dismissed. Id. at 13:4-5, 13:23-14:6.

**RESPONSE**

Disputed.  Barboza knew that the No-Contact Order had been dismissed.

22.     Based on this suspicion, Barboza checked with the clerk's office and confirmed that the no contact order was, in fact, no longer active. Id. at 13:5-11.

**RESPONSE**

Disputed. Barboza knew that the No-Contact Order had been dismissed.

23.     He then moved to dismiss Plaintiff's case. Id. at 13:11-12.

**RESPONSE**

Undisputed.

24.     The District Court terminated the no contact order in its Odyssey system the same day. Exhibit C at Response No. 6.

**RESPONSE**

Undisputed.

25.     The Attorney General accepted the termination into the State's BCI system on September 11, 2018. Id.

**RESPONSE**

Undisputed.

26.     The same day that it terminated the April 2018 no contact order, the District Court also entered, and then terminated, a second no contact order against Plaintiff, with Silvia as the protected party. Id. at Response No. 8; see also Exhibit K, No Contact Order Dated September 9, 2018.

**RESPONSE**

Undisputed.

27.   Although the Attorney General accepted the creation of this second no contact order into the State's BCI system the same day it was created (September 10, 2018), it did not accept the termination of that no contact order until December 31, 2018. Exhibit C at Response No. 9.

**RESPONSE**

Disputed.  The September 10, 2018 No-Contact Order was accepted into the RONCO BCI system on September 11, 2018.

28.   Although the BCI system typically updates automatically to reflect changes entered into the District Court's Odyssey system, occasionally this automatic translation does not occur and "those two systems may not reflect the same information." Exhibit L, June 17, 2020 Deposition Transcript of Edward Troiano, at 14:4-12, 15:19-21.

**RESPONSE**

Undisputed.

*C.   Plaintiff's December 19, 2018 arrest warrant*

29.   On December 8, 2018 at approximately 9:24 P.M., Huber was dispatched to Plaintiff's home in response to a reported breaking and entering. Exhibit F at Response No. 15.

**RESPONSE**

Disputed.

30.   Plaintiff had reported to dispatch that Silvia had broken the back door of his house and fled toward Fall River in a black Honda Civic. Id.

**RESPONSE**

Disputed as to what Plaintiff reported to dispatch.

31.   The dispatcher also advised Huber that there was an active no contact order between Plaintiff and Silvia, with Silvia as the protected party. Id.

**RESPONSE**

Disputed. There is no evidence of what the dispatcher may have advised Huber.

32.     Upon reaching the house, Huber spoke with Plaintiff, who told him that Silvia came to the house while he was cooking dinner at about 9:00 P.M. that night, saw him in the kitchen, and attempted to enter through the kitchen door. Id.

**RESPONSE**

Disputed as to the conversation.

33.     He stated further that Silvia broke the door frame in the process and immediately left the scene. Id.

**RESPONSE**

Disputed as to the conversation.

34.     Huber and Patrolman Adam Brillon, who also responded to the scene, found the kitchen to be in disarray, and the door frame had been broken off and was scattered on the kitchen floor. Id.

**RESPONSE**

Disputed as to the condition of the kitchen and door frame.

35.     Both officers, however, believed that the scene had been staged, as the damage to the door did not appear to them to be recent. Id.

**RESPONSE**

Disputed as to what they believed.

36.     At Huber's request, Plaintiff showed him footage from a surveillance camera mounted outside the damaged doorway. Id.

**RESPONSE**

Undisputed.

37.     The footage showed Silvia leaving the house at about 9:00 P.M., calmly and seemingly without incident. Id.

**RESPONSE**

Disputed as to what the footage shows.

38.     Plaintiff appeared highly intoxicated to Huber during this encounter, to the point that Huber was unable to take a statement from him. Id.

**RESPONSE**

Disputed that Plaintiff was intoxicated.

39.     Huber told him that he would contact him the next day to take his statement. Id.

**RESPONSE**

Undisputed.

40.     Plaintiff contacted the station later that night and gave Huber an address for Silvia in Fall River. Id.

**RESPONSE**

Undisputed.

41.     The Fall River Police Department contacted Silvia and told her to contact the Tiverton Police Department, and Huber also attempted to contact her himself. Id.

**RESPONSE**

Disputed that the Fall River Police Department contacted Silvia or that Huber attempted to contact her.

42.     Silvia called Huber at about 11:00 P.M. and told him that she had first arrived at Plaintiff's home at about 6:00 P.M. that evening. Id.

**RESPONSE**

43.     She had bought steaks earlier that day and brought them to the house to cook. Id.

**RESPONSE**

Undisputed.

44.     She told Huber that she and Plaintiff were drinking, and that Plaintiff eventually became very intoxicated and confrontational, prompting Silvia to leave at about 9:00 P.M. before the situation escalated. Id.

**RESPONSE**

Disputed as to what Silvia told Officer Huber.

45.     Huber asked her about the damaged door frame, and Silvia told him that Plaintiff had broken it while intoxicated several weeks, possibly even months, prior. Id.

**RESPONSE**

Disputed as to the conversation.

46.     On December 9, 2018, Huber returned to Plaintiff's house to take his statement, and again found Plaintiff to be highly intoxicated. Id.

**RESPONSE**

Disputed as to Plaintiff's intoxication.

47.     Plaintiff showed Huber more footage from the surveillance camera, which showed Silvia arriving at the house at about 6:00 P.M. Id.

**RESPONSE**

Undisputed.

48.     Plaintiff explained that the two of them were drinking and cooking together while trying to work out their past issues. Id.

**RESPONSE**

Disputed as to what Plaintiff said to Huber.

49.     They eventually began arguing; Plaintiff then told Silvia to leave, and she did. Id.

**RESPONSE**

Disputed as to any argument between Plaintiff and Silvia and that he asked her to leave.

50.     When Huber asked him about the damage to the door frame, Plaintiff initially said that he did not want to get anybody in trouble and did not answer further. Id.

**RESPONSE**

Undisputed.

51.     When Huber pressed him, he paused and avoided eye contact for a long time before eventually saying that Silvia broke it. Id.

**RESPONSE**

Disputed that Plaintiff paused or avoided eye contact.

52.     Plaintiff then provided a written statement, which read, "Darcie knocked my door down after told her too leave." Id.; see also Exhibit M, Tiverton Police Department Statement Form dated December 9, 2018.

**RESPONSE**

Undisputed.

53.     Silvia called Huber at the station on December 10, 2018 to tell him that, on the advice of her attorney, she would not come to the station to provide a statement. Exhibit F at Response No. 15.

**RESPONSE**

Disputed as to what Silvia told Huber.

54.     She did, however, recount the events to Huber over the phone, and Huber found that her statements that day were consistent with the version of events she had provided two days prior. Id.

**RESPONSE**

Disputed as to conversation with Silvia.

55.     The same day, Huber informed Sergeant James Rossi ("Rossi") of his findings, and Rossi advised him to draft an arrest warrant for Plaintiff for violation of a no contact order. Id.

**RESPONSE**

Undisputed.

56.     Dispatch ran warrant and order checks, which returned a RONCO record that indicated the existence of a no contact order against Plaintiff with a date issued of September 10, 2018, an expiration date of January 1, 2999, and Silvia as the protected party. Exhibit N, Tiverton Police Department Specific Query Reports dated December 10, 2018.

**RESPONSE**

Disputed.  RONCO indicated that the No-Contact Order had been terminated.

57.    Once the warrant was drafted, it was then left for Barboza, who was responsible for reviewing it and determining whether it articulated probable cause for an arrest. Exhibit J at 28:16-20, 66:7-9, 13, 19-21.

**RESPONSE**

Undisputed.

58.    In reviewing it, Barboza saw that the responding officers had "followed all the steps. They called RONCO. RONCO confirmed . . . the protection order [was] active." Id. at 66:10-12.

**RESPONSE**

Disputed that the Office had followed all the steps or contacted RONCO.

59.    He did not speak with any other officers in the course of reviewing or presenting the warrant, nor did his duties or responsibilities require him to do so. Id. at 28:21-29:4, 66:7-16, 66:23-67:2.

**RESPONSE**

Disputed that his duties did not require that he inquire further regarding the termination of the No-Contact Order.

60.    He did not know that the no contact order articulated in the warrant was connected to Plaintiff's September arrest and court appearance. Id. at 27:7-11.

**RESPONSE**

Disputed. He knew it had been terminated.

61.    Satisfied that the warrant articulated probable cause, Barboza then presented the warrant in the District Court on December 19, 2018, where it was signed by a District Court judge. Id. at 28:17-20, 66:12-14; Exhibit O, Signed Affidavit and Arrest Warrant for Antone J. Silva dated December 19, 2018.

**RESPONSE**

Disputed. There was no probable cause.

D.  *Plaintiff's arrest on December 28, 2018*

62.  On December 28, 2018 at approximately 11:24 P.M., Pelletier once again saw Plaintiff at Twin River Casino while working a security detail. Exhibit F at Response No. 15.

**RESPONSE**

      Undisputed.

63.  Recognizing him from previous encounters, Pelletier asked dispatch to run Plaintiff's name to check for any outstanding warrants or protective orders. Id.

**RESPONSE**

      Undisputed.

64.  Dispatch confirmed that there was an active warrant for Plaintiff's arrest for violation of a no contact order. Id.; see also Exhibit P, Tiverton Police Department Specific Query Reports dated December 28, 2018.

**RESPONSE**

      Undisputed.

65.  Dispatch's checks also revealed the same RONCO record as the checks run on December 10, 2018 in the course of drafting the arrest warrant. See Exhibit P.

**RESPONSE**

      Disputed. RONCO records indicate that the second No-Contact Order had terminated on December 11, 2018.

66.  Pelletier testified that he did not know that the no contact order for which the arrest warrant had been issued was related to Plaintiff's September arrest, or even that it arose from a matter involving the Tiverton Police Department. Exhibit G at 32:4-11, 34:19-22, 35:13-21.

**RESPONSE**

      Undisputed.

67.  Pelletier then requested backup and approached Plaintiff, advising him that he would be escorted to the casino's lobby because there was an active warrant for his arrest. Exhibit F at Response No. 15.

**RESPONSE**

Undisputed.

68.     When Plaintiff, who appeared to be intoxicated, responded that no such warrant existed and that the Tiverton Police Department simply enjoyed arresting him in the casino, Pelletier reiterated to him that there was an active warrant for his arrest and proceeded to escort him to the lobby. Id.

**RESPONSE**

Disputed.  Plaintiff was not intoxicated.

69.     Pelletier handcuffed Plaintiff, and another officer then transported Plaintiff to the police station. Id.

**RESPONSE**

Undisputed.

70.     Plaintiff appeared in the District Court on December 31, 2018, at which time the case against him was dismissed because the no contact order that he had purportedly violated was not in effect at the time of his arrest. See Exhibit Q, District Court Criminal Complaint for Case No. 18-2543; see also Exhibit R, Dismissal Under Criminal Rule 48(a) dated December 31, 2018.

**RESPONSE**

Undisputed.

71.     The Attorney General accepted the termination of the no contact order into the State's BCI system the same day. Exhibit C at Response No. 8.

**RESPONSE**

Disputed.  The No-Contact Order was entered on September 11, 2018.

E.      *The Tiverton Police Department's internal investigation and rules and regulations*

72.     In January 2019, Chief of Police Patrick W. Jones ("Jones") received a letter from Plaintiff's counsel regarding Plaintiff's arrests in September 2018 and December 2018. Exhibit S, Letter from Brian R. Cunha to Patrick W. Jones dated January 7, 2019.

**RESPONSE**

Undisputed.

73.     Upon receiving this letter, Jones assigned Lieutenant James Costa ("Costa") to conduct an internal investigation into the two arrests. Exhibit T, June 2, 2020 Deposition Transcript of Patrick W. Jones, at 27:14-28:8.

**RESPONSE**

Undisputed.

74.     Upon completing his investigation, Costa determined that the allegations of wrongdoing arising from the two arrests were unfounded. Exhibit U, Final Report for Tiverton Police Department Internal Investigation Number 19-1-IV.

**RESPONSE**

Undisputed.

75.     Jones reviewed the investigation and agreed with Costa's findings. Id.; Exhibit T at 36:9-17 ("The internal investigation was conducted to assure that the Tiverton police personal [sic] acted within policy and procedure, which they did by contacting RONCO. I have no doubt that . . . the information they received was that the order was active at that time.").

**RESPONSE**

Undisputed.

76.     The Tiverton Police Department's rules and regulations contain a section dedicated to calls involving domestic violence. See generally Exhibit V, Tiverton Police Department General Order No. 310.10.

**RESPONSE**

Undisputed.

77.     Subsection (IV)(C)(5)(b) of that policy provides:

As soon as practicable, determine if a protective order or no-contact order is in effect. If such as order is alleged to be in effect, ask to see a copy of it.

1)      If no copy is available, you may contact headquarters to determine if a protective order is in effect and if a copy was served on the defendant.

2)     You may also rely on the statement of the protected person that such an order is in effect.

3)     If no other information is available ask the abusive party if s/he is aware the order is in effect and that s/he is violating it . . . .

4)     A temporary reconciliation of the couple, where the person being protected by the order allows the abuser to enter the residence, does not void the protective order.

Id. at 8.

**RESPONSE**

Undisputed.

78.     Subsection (IV)(A)(4) of the same policy provides, in part:

b.     AN ARREST IS MANDATED if you have probable cause to believe . . . violation of a no-contact order issued by a court or bail commissioner, ha[s] occurred within twenty-four (24) hours of the alleged crime (RI General Law 12-29-3). . . .

1.     d.     If an arrest without a warrant cannot be made, the officer shall seek a warrant for arrest if there is probable cause to do so.

Id. at 4.

**RESPONSE**

Undisputed.

Plaintiff, Antone Silva,
By his Attorneys,
BRIAN CUNHA & ASSOCIATES, P.C.

*/s/ Brian R. Cunha*

_____

Brian R. Cunha, Esq.
311 Pine Street
Fall River, MA 02720
Tel: (508) 675-9500
Fax: (508) 679-6360
R.I.#4074

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on the 10th day of August, 2020, I caused a copy of the within to be electronically filed and served through the CM/ECF filing system, which is available for electronic downloading and viewing, on all attorneys of record, who are as follows:

Marc DeSisto, Esq.
DeSisto Law, LLC
60 Ship Street
Providence, RI 02903

Alexander D. Schultheis, Esq.
150 South Main Street
Providence, RI 02903

*/s/ Brian R. Cunha*
_____