UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

ANTONE SILVA,
    *Plaintiff,*
v.

STATE OF RHODE ISLAND, TOWN
OF TIVERTON, PATRICK W. JONES,
Individually and as Chief of Police for the
Tiverton Police Department, SERGEANT
MICHAEL BARBOZA, JOSHUA
PELLETIER and RYAN HUBER,
    *Defendants.*

C.A. No. 1:19-cv-00429-MSM-LDA

## TIVERTON DEFENDANTS' SECOND STATEMENT OF DISPUTED FACTS

**I.    Introduction**

Now come Defendants Town of Tiverton, Patrick W. Jones, Michael Barboza, Joshua Pelletier, and Ryan Huber, pursuant to Local Rule 56, and hereby submit their response to Plaintiff Antone Silva's Statement of Undisputed Facts, Docket at #47.

**II.    Disputed and Undisputed Facts**

1. On April 14, 2018, the Plaintiff was arrested by the Tiverton Police and charged with domestic simple assault on his girlfriend, Darcie LaPointe. *See* **Exhibit 1**, attached hereto, Plaintiff's Answers to State's Interrogatories, Answer to Interrogatory No. 19.

   **Response: Undisputed.**

2. As a result of the April 14, 2018 arrest, a No-Contact Order was issued against the Plaintiff. *See* **Ex. 1**, Answer to Interrogatory No. 19.

   **Response: Undisputed.**

3. On June 21, 2018, the underlying case was dismissed as well as the First No-Contact Order by the Newport County District Court. *See* **Ex. 1**, Answer to Interrogatory No. 19.

   **Response: Undisputed.**

4. On September 8, 2018, the Plaintiff was arrested a second time by Defendant, Joshua Pelletier ("Officer Pelletier") of the Tiverton Police at the Tiverton Twin River Casino for

1

allegedly violating the No-Contact Order that had been dismissed on June 21, 2018. *See* **Ex. 1**, Answer to Interrogatory No. 3; *see also* **Exhibit 2**, attached hereto, Deposition Transcript of Sergeant Michael Barboza ("Sergeant Barboza"), at ps. 8:15-24 – 9:1; 10:2-13; **Exhibit 3**, attached hereto, Deposition Transcript of Officer Pelletier, at p. 12:14-20.

**Response: Undisputed.**

5. Upon making the arrest of the Plaintiff on September 8, 2018, Officer Pelletier failed to speak with or check with a member of the Tiverton Police Department to determine whether the No-Contact Order for which he was arresting Plaintiff had been previously dismissed. *See* **Ex. 3**, at p. 13:20-24 – 14:1-6.

   **Response: Disputed. The Tiverton Defendants dispute that Pelletier failed to determine whether the no contact order was previously dismissed. Pelletier confirmed with dispatch that the no contact order was active according to the RONCO system. Tiverton Defendants' Exhibit F, Docket at #35-7, at Response No. 15.**

6. As a result of the September 8, 2018 arrest, a second no-contact order was entered against the Plaintiff on September 10, 2018 (the "Second No-Contact Order"). *See* **Exhibit 4**, attached hereto, Deposition Transcript of Maureen Palazzo, at p. 26:20-24.

   **Response: Undisputed.**

7. The First No-Contact Order entered on April 14, 2018 and dismissed on June 21, 2018 was subsequently sent to RONCO who documented the termination on September 10, 2018. *See* **Ex. 4**, at p. 30:19-23.

   **Response: Undisputed.**

8. The second No-Contact Order issued on September 10, 2018 was also terminated. *See* **Ex. 4**, at p. 23:23-24 – 24:1-3.

   **Response: Undisputed.**

9. The Second No-Contact Order was marked by the Court as being accepted into RONCO's computerized criminal history system on September 11, 2018. *See* **Ex. 4**, at p. 24:5-8.

   **Response: Undisputed to the extent that the creation of the second no contact order was accepted into RONCO's computerized criminal history system on September 11, 2018. Disputed to the extent that the termination of the second no contact order was accepted into the system on that date; the termination was accepted into the system on December 31, 2018. Tiverton Defendants' Exhibit C, Docket at #35-4, at Response No. 9.**

10. Additionally, on September 10, 2018, an electronic J-LINKS notification update was sent to the Tiverton Police Department, notifying them of the dismissal of the Second No-Contact Order. *See* **Ex. 4**, at p. 24:16-22; *see also* **Exhibit 5**, attached hereto, Court Docket from Case No. 21-2018-01838; **Exhibit 6**, attached hereto, Deposition Transcript of Chief Patrick Jones ("Chief Jones"), at p. 49:14-23.

    **Response: Undisputed.**

11. J-LINKS is a court connect system that links the police department with the court system. That notifies the police department of actions taken by the Court on pending cases. *See* **Ex. 6**, at p. 12:19-21.

    **Response: Undisputed.**

12. If a J-LINKS update is made in the court's system regarding a protection order being terminated, that information would be received by the prosecution officer of the respective police department. *See* **Ex. 6**, at p. 14:24 – 15:1-13.

    **Response: Undisputed.**

13. It is undisputed that Sergeant Michael Barboza ("Sergeant Barboza") is the prosecution officer for the Town of Tiverton. *See* **Ex. 6**, at p. 13:15-18; *see also* **Ex. 2**, at p. 6:9-20.

    **Response: Undisputed.**

14. Sergeant Barboza is the individual who would be aware of the termination of a No-Contact Order for a Tiverton case as the prosecuting officer for Tiverton. *See* **Ex. 6**, at ps. 16:19-24; 17:1-3; 71:14-22.

    **Response: Undisputed.**

15. Sergeant Barboza was aware of the termination of the April 2018 No-Contact Order, along with the dismissal of the underlying case, on June 21, 2018. *See* **Ex. 2**, at p. 17:17-22; *see also* **Ex. 6**, at p. 15:9-13.

    **Response: Undisputed.**

16. Sergeant Barboza was also in court on September 10, 2018 and dismissed the Plaintiff's second arrest from September 8, 2018, which was subsequently ordered to be dismissed by the Newport County District Court. *See* **Ex. 2**, at ps. 12:15-24; 13:1-12; 48:5-11.

    **Response: Undisputed.**

17. Sergeant Barboza admitted under oath that after a case is dismissed, it is the custom and practice of the Tiverton Police Department to go back to the police department and enter

information into the department's computer system regarding such a dismissal by entering the arrest number and closing out the arrest. *See* **Ex. 2**, at p. 19:8-13.

**Response: Undisputed.**

18. Information regarding such a dismissal or the closing out of an arrest is available within the Tiverton Police Department's computer system. *See* **Ex. 2**, at p. 19:14-17; *see also* **Ex. 6**, at p. 47:17-22.

    **Response: Undisputed.**

19. On September 10, 2018, Sergeant Barboza testified that he returned to the Tiverton Police Station to enter the dismissal of the September 10, 2018 arrest matter that same day and closed out the arrest in the Tiverton Police Department's system. *See* **Ex. 2**, at p. 56:4-12.

    **Response: Undisputed.**

20. Sergeant Barboza also testified that he spoke to the detectives regarding the dismissal, specifically indicating that the Plaintiff's No-Contact Order from April 2018 was not active anymore. *See* **Ex. 2**, at p. 56:4-12.

    **Response: Disputed. The Tiverton Defendants dispute that Barboza definitively told other detectives in the department that Plaintiff's April 2018 no contact order was no longer active. The testimony cited above reads as follows:**

    > **Q**     **I see. Okay. Only a couple more questions. Did you speak to -- you testified that you didn't communicate with anybody about the dismissal, the September 10 case; correct?**
    >
    > **A**     **I can't tell you I did or I didn't. I probably came back here and told the guys in detectives, Yeah. This guy's order was not active anymore, you know. And I closed the case out of the system.**

    **Plaintiff's Exhibit 2, Docket at #45-2, at 56:4-12.**

21. On September 10, 2018, Officer Pelletier himself was a detective in the Tiverton Police Department, and would know about the dismissal of the Plaintiff's No-Contact Order by Sergeant Barboza. *See* **Ex. 3**, at p. 8:14-24 – 9:1-4.

    **Response: Disputed. The Tiverton Defendants dispute that Pelletier would have known about the dismissal of the no contact order simply by virtue of being a detective in the Tiverton Police Department the day it was dismissed. There is no evidence in the record that Pelletier was physically present at police headquarters at the time**

4

>   **Barboza returned from court and "probably…told the guys in detectives" that the no contact order was no longer active. Plaintiff's Exhibit 2, Docket at #45-2, at 56:8-9. Furthermore, Pelletier testified that Barboza never told him that the case had been dismissed. Tiverton Defendants' Exhibit Z, June 3, 2020 Deposition Transcript of Joshua Pelletier, at 44:22-24.**

22. On December 8, 2018, Officer Huber of the Tiverton Police Department responded to the Plaintiff's house based on a call from the Plaintiff about his girlfriend Darcie Silva. *See* **Exhibit 7**, attached hereto, Town's Answers to Plaintiff's Interrogatories, Answer to Interrogatory No. 15.

    **Response: Undisputed.**

23. Officer Pelletier, who ultimately prepared the December 2018 police report, indicated in said report for his December 10, 2018 narrative that "dispatch advised units that there was an active No Contact/Protection Order between Darcie Silva (Protected Party) and Antone Silva." *See* **Ex. 3**, at p. 38:5-16. *see also* **Exhibit 8**, attached hereto, Town's Responses to Plaintiff's Requests for Production of Documents, Response No. 14, at Bates Stamp No. Tiverton-RFP-000608.

    **Response: Disputed. The Tiverton Defendants dispute that Pelletier prepared the December 10, 2018 police narrative, which was in fact prepared by Huber as indicated at the top of the page. Plaintiff's Exhibit 8, Docket at #45-8, at 3. Pelletier prepared the December 28, 2018 police narrative accompanying the arrest report of the same date. Tiverton Defendants' Exhibit AA, Personnel Narrative for Detective Joshua D. Pelletier for Arrest No. 18-493-AR.**

24. Officer Pelletier testified that, at the time of the Plaintiff's arrest, he was unaware of the fact that the no-contact order was the was previously dismissed by the Court, which was specifically a Tiverton case. *See* **Ex. 3**, at 39:7-17.

    **Response: Undisputed.**

25. Officer Pelletier also testified that ordinarily dispatch does not tell officers the city, town, or municipality from where an active No-Contact Order originates. *See* **Ex. 3**, at p. 39:18-24 – 40:1.

    **Response: Undisputed.**

26. Notwithstanding this statement, the Police Report, which Officer Pelletier himself authored, specifically notes that the active No-Contact Order upon which the Plaintiff's December 2018 arrest was based on the December 10, 2018 Second No-Contact Order, a Tiverton case, and, as noted above, for which a J-LINKS electronic notification update was sent to the Tiverton Police Department on September 10, 2018. *See* **Ex. 2**, at p. 56:4-12; **Ex. 3**, at p. 34:9-18; **Ex. 6**, at p. 49:14-23; **Ex. 8**, at Bates Stamp No. Tiverton-RFP-000633.

5

      **Response: Disputed.** **The Tiverton Defendants dispute that Pelletier authored the portion of the police report referenced; the referenced portion of the police report is a Specific Query Report run by Dispatcher Brooke K. Gubala at police headquarters in response to a request from Pelletier on the scene. Plaintiff's Exhibit 8, Docket at #45-8, at 4. Additionally, although the Specific Query Report provides the District Court case number associated with the no contact order, the report itself does not indicate that the Tiverton Police was involved in the case. Id.**

27. Based upon the police report narrative authored by Officer Pelletier on December 8, 2018, on December 19, 2018, Sergeant Barboza signed an arrest warrant for the Plaintiff's arrest for alleged violation of the Second No-Contact Order. *See* **Ex. 2**, at ps. 9:21-24 – 10:1.

    **Response: Disputed. The Tiverton Defendants dispute that Pelletier authored the narrative arising from the Tiverton Police Department's response to Plaintiff's home on December 8, 2018; that narrative was instead authored by Huber. Plaintiff's Exhibit 8, Docket at #45-8, at 4.**

28. Sergeant Barboza testified that once the warrant was left for his review and signature, he believed that the responding officers "followed all the steps. They called RONCO. RONCO confirmed…the protection order [was] active." *See* **Ex. 2**, at p. 66:10-12.

    **Response: Undisputed.**

29. Eleven (11) days elapsed between Officers Huber and Pelletier first learning of the existence of the active no-contact order and their subsequent drafting of the arrest warrant and its execution by Sergeant Barboza. *See* **Ex. 2**, at p. 9:21-24 – 10:1.

    **Response: Disputed. The Tiverton Defendants dispute that Pelletier first learned of the existence of the active no contact order at the same time as Huber and that Pelletier was involved in drafting the arrest warrant; there is no evidence in the record that Pelletier was involved in the December events until his arrest of Plaintiff on December 28, 2018.**

30. Sergeant Barboza testified that he did not speak with any officers in the course of reviewing or presenting the warrant. *See* **Ex. 2**, at p. 28:21 – 29:4; 66:7-16, 66:22-24 – 67:1-2.

    **Response: Undisputed.**

31. The information regarding the dismissal of the Second No-Contact Order was thus available in the Tiverton Police Department's system at the time of the Plaintiff's December 2018 arrest *See* **Ex. 2**, at p. 56:4-12.

    **Response: Undisputed.**

32. Based upon the police report from December 8, 2018, an arrest warrant was signed by Sergeant Barboza against the Plaintiff for alleged violation of a No-Contact Order. *See* **Ex. 2**, at p. 9:21-24 – 10:1.

    **Response: Disputed.  The Tiverton Defendants dispute that Barboza signed the warrant based on the police report from the Tiverton Police Department's encounter with Plaintiff originating on December 8, 2018.  Barboza signed the arrest warrant based on the contents of the warrant application that he reviewed.  Tiverton Defendants' Exhibit J, Docket at #35-11, at 66:7-21.**

33. Subsequently, on December 28, 2018, the Plaintiff was arrested by Office Pelletier for an alleged violation of a No-Contact Order. *See* **Ex. 1**, Answer to Interrogatory No. 19.

    **Response: Undisputed.**

34. At the time of the arrest, both the Plaintiff and his girlfriend advised Office Pelletier that the No-Contact Order had been terminated. *See* Affidavit of Antone Silva.

    **Response: Disputed.  The Tiverton Defendants dispute that Darcie Silvia was present during Plaintiff's arrest on December 28, 2018.  Tiverton Defendants' Exhibit Z at 19:23-20:3.**

35. Despite department rules and regulations, requesting that Office Pelletier check with the police department, or the Court he nevertheless arrested the Plaintiff a second time.

    **Response: Disputed.  The Tiverton Defendants dispute that Pelletier failed to follow department rules and regulations by failing to check with the police department regarding the no contact order.  Pelletier contacted dispatch, who then confirmed with RONCO that the no contact order was active.  Tiverton Defendants' Exhibit F, Docket at #35-7, at Response No. 15.  The Tiverton Police Department's rules and regulations provide that contacting dispatch is one means by which an officer can confirm the existence of an active no contact order.  Tiverton Defendants' Exhibit V, Docket at #35-23, at 8.**

36. According to the Bureau of Criminal Identification's own training manual instructions, anytime a police department calls BCI after-hours to verify the active state of a No-Contact Order, the police department is always instructed to double-check this with the Courts to verify the accuracy of whether a No-Contact Order is active or not. *See* **Exhibit 9**, attached hereto, Deposition Transcript of Edward Troiano, at p. 17:18-24 – 18:1-3; 19:4-11; *see also* **Exhibit 10**, attached hereto, BCI Training Instructions.

    **Response: Undisputed.**

37. Despite Officer Pelletier's testimony that dispatch contacted "RONCO" at BCI on December 8, 2018 to confirm the active status of the Second No-Contact Order against the Plaintiff, it dispatch did not contact the Courts at any time to confirm and double-check

7

whether the Second No-Contact Order was active or not, as BCI would ordinarily instruct them to do. *See* **Ex. 3**, at p. 38:5-16; 39:18-24 – 40:1.

**Response: Undisputed.**

38. The Defendant State of Rhode Island has admitted that it is not contesting its liability for the Plaintiff's first arrest in September 2018. Its employees were negligent with respect to the failure to notify RONCO that the No-Contact Order was terminated on June 21, 2018 resulting in the Plaintiff's December 8, 2018 arrest. *See* Defendant State of Rhode Island's Statement of Undisputed Facts in Support of its Objection to Plaintiff's Motion for Summary Judgement.

    **Response: Objection.  Plaintiff's assertion that State employees were negligent is improper in a statement of undisputed facts.**

Defendants,
By their attorneys,

*/s/Marc DeSisto*

*/s/Patrick K. Burns*
Marc DeSisto, Esq. (#2757)
Patrick K. Burns, Esq. (#10107)
DESISTO LAW LLC
60 Ship Street
Providence, RI 02903
(401) 272-4442
marc@desistolaw.com
pburns@desistolaw.com

## CERTIFICATION OF SERVICE

I hereby certify that on this 13th day of August, 2020, I electronically filed and served this document through the electronic filing system upon the following:

| | |
|---|---|
| Brian R. Cunha, Esq. (#4074) | Alexander D. Schultheis, Esq. (#9534) |
| brian@briancunha.com | aschultheis@riag.ri.gov |
| | |
| | Andrea Shea, Esq. (#9702) |
| | ashea@riag.ri.gov |

*/s/Patrick K. Burns*
