UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | |
|---|---|
| ANTONE SILVA | ) )  ) |
| Plaintiff, | ) ) |
| v. | ) ) ) C.A. No. 1:19-CV-00429-MSM-LDA |
| STATE OF RHODE ISLAND, TOWN OF TIVERTON, PATRICK W. JONES, Individually and as Chief of Police for the Tiverton Police Department, SERGEANT MICHAEL BARBOZA, JOSHUA PELLETIER, and RYAN HUBER, | ) ) ) ) ) ) ) ) ) |
| Defendants. | ) |

MEMORANDUM AND ORDER

Mary S. McElroy, United States District Judge.

This matter arises from multiple arrests of the plaintiff, Antone Silva, for violation of no-contact orders that the state court had terminated prior to the arrests. The plaintiff has filed this action pursuant to 42 U.S.C. §§ 1983 and 1988 for alleged violation of his rights under the Fourth and Fourteenth Amendments to the United States Constitution, as well as several claims under Rhode Island law. Specifically, the plaintiff alleges against the defendant State of Rhode Island ("the State") common-law negligence for failure to properly indicate a termination of the no-contact orders in the relevant State databases. Against the Town of Tiverton, Chief of Police Patrick W. Jones, Officers Michael Barboza, Joshua Pelletier, and Ryan Huber (collectively "the Tiverton defendants"), the plaintiff asserts the remainder of his

1

constitutional and state-law claims.

The Court now considers the plaintiff's Motion for Partial Summary Judgment (ECF No. 30) on the issue of liability and the Tiverton defendants' Motion for Summary Judgment (ECF No. 35) on the entirety of the plaintiff's Second Amended Complaint.

For the following reasons, the Court GRANTS IN PART and DENIES IN PART both Motions.

## I. BACKGROUND

On April 8, 2018, the plaintiff was arrested by an officer of the Tiverton Police Department for domestic simple assault and battery on his girlfriend, Darcie Silvia.[1] (ECF No. 35-2.)  The State of Rhode Island's Second Division District Court issued a no-contact order, with Silvia as the protected party, and it was entered into the Rhode Island Judiciary's Odyssey System on April 18, 2018.[2]  (ECF Nos. 35-3, 35-4 at 9.) The Rhode Island Department of Attorney General then accepted this information to its Bureau of Criminal Investigation ("BCI") system.  (ECF No. 35-4 at 10.)  The State's Restraining Order and No-Contact Order system ("R.O.N.C.O."), where all domestic violence and sexual assault protective orders and modifications to them must be filed, is a system within the Attorney General's BCI unit.  *See* R.I.G.L. § 12-

---

[1] Because of the similarity in surnames between the plaintiff and his girlfriend the court will refer to the plaintiff as "plaintiff" and his girlfriend as "Silvia."

[2] The Odyssey System is a computerized database for case information that is used throughout the Rhode Island District Courts.  Court staff enter case information into the database as events occur in each case.

29-8.1.

On June 21, 2018, the state district court dismissed the case against the plaintiff and terminated the no-contact order. (ECF No. 35-5.) That same day, a district court clerk entered this dismissal into the court's Odyssey System, on a screen tab titled "Case Events." (ECF No. 35-6.) The district court clerk did not, however, enter the information into the matter's "Protective Order" tab, another section contained within the Odyssey System where the termination of no-contact orders is documented. *Id.* Thus, as of June 21, 2018, the "Case Events" section indicated that the plaintiff's no-contact order was dismissed, but the "Protective Order" tab did not.

R.O.N.C.O. only receives information contained in the "Protective Order" tab, not the "Case Events" tab. *Id.* As such, the R.O.N.C.O. system continued to indicate that the no-contact order was active.

### A. The September 2018 Arrest

On September 8, 2018, Sergeant Joshua Pelletier responded to a disturbance between the plaintiff and Silvia at the Twin River Casino in Tiverton. (ECF No. 35-7 at 7.) Through dispatch, Pelletier checked with the State's R.O.N.C.O. system and determined that the no-contact order was still active. *Id.* He therefore arrested the plaintiff. *Id.*

The plaintiff appeared in district court for his arraignment on September 10, 2018. (ECF No. 35-8 at 3.) Detective Sergeant Michael Barboza, as the Tiverton Police Department's prosecution officer, was present in court and had an "inkling," that the no-contact order had been dismissed. *Id.* at 4. Based on this suspicion,

3

Barboza checked with the clerk's office and confirmed that the no-contact order was, in fact, no longer active. *Id.* He then moved to dismiss the plaintiff's case. *Id.* The district court terminated the no contact order in its Odyssey System the same day. (ECF No. 35-4 at 9.)  The Department of the Attorney General accepted the termination into the State's BCI system on September 11, 2018. *Id.*

On the same date that it terminated the no-contact order, the district court also entered, and then terminated, a second no-contact order against the plaintiff, with Silvia as the protected party. *Id.* at 11.  Although the Department of the Attorney General accepted the creation of this second no-contact order into the state's BCI system the same day it was created (September 10, 2018), it appears, though the parties dispute, that it did not accept the termination of that no-contact order until December 31, 2018.  (ECF No. 35-4 at 11-12.)

Also on September 10, 2018, an electronic J-LINKS notification update was sent to the Tiverton Police Department, notifying it of the dismissal of the second no-contact order.  (ECF No. 45-4 at 4.)  J-LINKS is a court connect system that links the police department with the court system.  (ECF No. 45-6 at 3.)  If a J-LINKS update is made to the court's system when an order of protection is removed and terminated, that information would be received by the prosecution officer of the proper police department. *Id.* at 3-4.

Sergeant Barboza testified at his deposition that after a case is dismissed, it is a custom and practice of the Tiverton Police Department to go back to the police department and enter information into the department's computer system noting the

4

dismissal by entering the arrest number and closing out the arrest. (ECF No. 45-2 at 10.) He did so in this instance. *Id.* at 15. Sergeant Barboza also testified that he likely spoke to the detectives about the dismissal and that the plaintiff's no-contact order was no longer active. *Id.*

### B. The December 2018 Arrest

On December 8, 2018, Officer Ryan Huber was dispatched to the plaintiff's home, based on information about an argument between the plaintiff and his girlfriend, Silvia, and a reported breaking and entering. (ECF No. 35-7 at 7.) The plaintiff had reported to dispatch that Silvia had broken the back door of his house and fled toward Fall River, Massachusetts. *Id.* The dispatcher advised Officer Huber that there was an active no-contact order between the plaintiff and Silvia, with Silvia as the protected party. *Id.* Upon reaching the house, Officer Huber spoke with the plaintiff, who told him that Silvia came over while he was cooking dinner at about 9:00 p.m. that night, saw him in the kitchen, and attempted to enter through the kitchen door. *Id.* He stated further that Silvia broke the door frame in the process and immediately left the scene. *Id.* Officer Huber and Patrolman Adam Brillon, who also responded to the scene, found the kitchen to be in disarray, and the door frame had been broken off and was scattered on the kitchen floor. *Id.* Both officers, however, believed that the scene had been staged, as the damage to the door did not appear to them to be recent. *Id.* at 8.

The plaintiff contacted the Tiverton police department later that night and gave Officer Huber an address for Silvia in Fall River. *Id.* The Fall River Police

5

Department contacted Silvia and told her to contact the Tiverton Police Department. *Id.* Silvia called Officer Huber at about 11:00 p.m. and told him that she had first arrived at plaintiff's home at about 6:00 p.m. that evening, that she and the plaintiff were drinking, when the plaintiff became very intoxicated and confrontational, prompting Silvia to leave at about 9:00 p.m. *Id.* Huber asked her about the damaged door frame, and Silvia told him that the plaintiff had broken it while intoxicated several weeks, possibly even months, prior. *Id.*

On December 9, 2018, Officer Huber returned to the plaintiff's house to take his statement. *Id.* at 9. The plaintiff then provided a written statement, which read, "[Silvia] knocked my door down after told her too [*sic*] leave." *Id.* Silvia called Huber on December 10, 2018, and he found that her statements were consistent with the version of events she had provided two days prior. *Id.*

The same day, Officer Huber informed Sergeant James Rossi of his findings, and Rossi advised him to draft an arrest warrant for the plaintiff for violation of a no-contact order. *Id.* Dispatch ran warrant and order checks, which returned a R.O.N.C.O. record that indicated the existence of a no-contact order against the plaintiff with a date issued of September 10, 2018, an expiration date of January 1, 2999, and Silvia as the protected party. *Id.*; ECF No. 45-8. Once the warrant was drafted, it was then left for Sergeant Barboza, who was responsible for reviewing it and determining whether it articulated probable cause for an arrest. (ECF No. 35-11 at 14.) Sergeant Barboza did not speak with any other officers while reviewing or presenting the warrant. *Id.* He testified that he did not know that the no-contact

order articulated in the warrant was connected to the plaintiff's September arrest and court appearance. *Id.* at 9. Sergeant Barboza then presented the warrant in the state district court on December 19, 2018, where it was signed by a district court judge. *Id.* at 10, 14.

On December 28, 2018, at approximately 11:24 p.m., Sergeant Pelletier saw the plaintiff at the Twin River Casino while working a security detail. (ECF No. 35-7 at 9.) Recognizing him from previous encounters, Pelletier asked dispatch to run the plaintiff's name to check for any outstanding warrants or protective orders. *Id.* Dispatch confirmed that there was an active warrant for the plaintiff's arrest for violation of a no-contact order. *Id.* Dispatch's checks also revealed the same R.O.N.C.O. record as the checks run on December 10, 2018, during the drafting of the arrest warrant. (ECF No. 45-8 at 4.) Sergeant Pelletier testified that he did not know that the no-contact order for which the arrest warrant had been issued was related to the plaintiff's September arrest, or even that it arose from a matter involving the Tiverton Police Department. (ECF No. 35-8 at 7.) The plaintiff was again arrested.

The plaintiff appeared in state district court on December 31, 2018, at which time the case against him was dismissed because the no-contact order that he had purportedly violated was not in effect at the time of his arrest. (ECF Nos. 35-18 & 35-19.)

### C. The Instant Proceedings

The plaintiff filed suit against the State and the Tiverton defendants, alleging in his Second Amended Complaint the following causes of action:

7

- Violation of his substantive due process rights in contravention of the Fourteenth Amendment to the United States Constitution: Count I (Sergeant Barboza); Count VI (Sergeant Pelletier); and Count XI (Patrol Officer Huber).

- Unreasonable search and seizure in violation of the Fourth Amendment: Count II (Sergeant Barboza); Count VII (Sergeant Pelletier); Count XII (Patrol Officer Huber).

- Unreasonable search and seizure in violation of Article I § 6 of the Rhode Island Constitution: Count III (Sergeant Barboza); Count VIII (Sergeant Pelletier); Count XIII (Patrol Officer Huber).

- State-law claim of intentional infliction of emotional distress: Count IV (Sergeant Barboza); Count IX (Sergeant Pelletier); Count XIV (Patrol Officer Huber).

- State-law claim of violation of the right of privacy in contravention of R.I.G.L. § 9-1-28.1(a)(1): Count V (Sergeant Barboza); Count X (Sergeant Pelletier); Count XV (Patrol Officer Huber).

- Supervisory claims against the Town of Tiverton and Chief Patrick Jones for failure to properly hire, train, supervise, and discipline the officer defendants: Count XVI.

- State-law claims for negligence: Count XV (Sergeant Barboza); Count XVI (Sergeant Pelletier); Count XVII (Patrol Officer Huber); Count XVIII (Town

of Tiverton and Chief Patrick Jones).³

- State-law claim for negligence against the State of Rhode Island: Count XIX.

The plaintiff moved for partial summary judgment on the issue of liability for its negligence claim against the State arising from the September 2018 arrest. The Tiverton defendants moved for summary judgment on all claims against them.

## II.   SUMMARY JUDGMENT STANDARD

Summary judgment's role in civil litigation is "to pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." *Garside v. Osco Drug. Inc.,* 895 F.2d 46, 50 (1st Cir. 1990). Summary judgment can be granted only when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56. "A dispute is genuine if the evidence about the fact is such that a reasonable jury could resolve the point in the favor of the non-moving party. A fact is material if it carries with it the potential to affect the outcome of the suit under the applicable law." *Santiago–Ramos v. Centennial P.R. Wireless Corp.,* 217 F.3d 46, 52 (1st Cir. 2000).

---

³ Counts XV and XVI for state-law negligence are misnumbered in the Second Amended Complaint as the numerals ascribed to them are duplicative of those for the claims for violation of the right of privacy against Officer Huber and the claim for supervisory liability against the Town of Tiverton and Chief Patrick W. Jones, respectively.

9

## III. DISCUSSION

### A. The Plaintiff's Claims Arising From The September 2018 Arrest

The plaintiff informed the Court at oral argument that he makes no claim against the Tiverton defendants for the September 8, 2018, arrest. To the extent that the Second Amended Complaint asserts any liability against the Tiverton defendants for the September arrest, the Motion for Summary Judgment of those defendants on those claims is granted.

As to the State, the plaintiff asserts negligence for a district court clerk's failure to properly terminate the first no-contact order in the court system. The State concedes liability for noncompliance with R.I.G.L. § 12-29-8.1, which requires that all terminations of no-contact orders "be faxed or delivered to the B.C.I. unit no later than the end of the day of the modification."

The plaintiff's Motion for Partial Summary Judgment as to liability in negligence against the State for the September arrest therefore is granted.

### B. The Plaintiff's Claims Arising From The December 2018 Arrest

The plaintiff advised the Court at oral argument that he is not moving for partial summary judgment on his claims for the December 28, 2018, arrest against any of the defendants, due to his contention that there are genuine issues of material fact that cannot be decided now as a matter of law. The plaintiff's Motion is therefore denied as to the December arrest.

The Court now proceeds to consider the Tiverton defendants' Motion for Summary judgment on each of the plaintiff's claims.

1. The Plaintiff's Claims Against the Tiverton Defendants

   a. Fourteenth Amendment Claims

The plaintiff conceded at oral argument that his Fourteenth Amendment substantive due process claims are inapplicable because, as the matter alleges an unreasonable seizure of the plaintiff's person, the Fourth Amendment instead provides the specific decisional framework for the facts alleged. *See S. Cty. Sand & Gravel Co. v. Town of S. Kingstown*, 160 F.3d 834, 835 (1st Cir. 1998) ("When a specific provision of the Constitution protects individuals against a particular kind of physical intrusion by government actors, individuals seeking redress for such an intrusion must assert their claims under that particular constitutional rubric instead of invoking the more generalized notion of substantive due process.").

The Tiverton defendants' Motion for Summary Judgment on the plaintiffs' Fourteenth Amendment substantive due process claims therefore is granted.

   b. Fourth Amendment Claim

The Tiverton defendants argue that the plaintiff's Fourth Amendment claim arising from the December arrest fails because there was probable cause to substantiate the arrest.

"[T]he ultimate question for determining whether an arrest violates the Fourth Amendment is . . . whether there was probable cause to believe that the arrestee had committed or was committing a crime." *Wilson v. City of Boston*, 421 F.3d 45, 55 (1st Cir. 2005). Probable cause exists when, "at the time of the arrest, the 'facts and circumstances within the officer's knowledge . . . are sufficient to warrant a prudent

11

person, or one of reasonable caution, in believing, in the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense.'" *Holder v. Town of Sandown*, 585 F.3d 500, 504 (1st Cir. 2009); *see also Acosta v. Ames Dep't Stores, Inc.*, 386 F.3d 5, 9 (1st Cir. 2004) ("Probable cause for an arrest exists when the arresting officer, acting upon apparently trustworthy information, reasonably concludes that a crime has been (or is about to be) committed and that the putative arrestee likely is one of the perpetrators."). It "requires only a probability that the defendant committed the crime." *Holder*, 585 F.3d at 504. When material facts are disputed, the question of probable cause is not amendable to summary judgment. *See Acosta*, 386 F.3d 5, 8 (1st Cir. 2004); *cf. Bolton v. Taylor*, 367 F.3d 5, 8 n.2 (1st Cir. 2004) (noting that "it is pointless to submit the … probable cause questions to the jury at all unless the facts are disputed").

The Tiverton defendants argue that when Officer Huber drafted the arrest warrant on December 10, 2018, he received information that there was an active no-contact order. He included this information in the warrant application, which Sergeant Barboza then reviewed and presented in court on December 19. The Tiverton defendants assert that to the extent that Sergeant Barboza even recognized the plaintiff's name as he reviewed it and remembered the events terminating the no-contact order in district court on September 10, he could not have known from the information at hand that the no-contact order the plaintiff purportedly violated on December 8 was erroneously listed as active. Sergeant Barboza, they argue, only knew that a purportedly active no-contact order between the plaintiff and Silvia was

12

in effect; he did not know, nor did he have reason to know, the date that the purported no-contact order was created, the particular police department involved, or any other information as to how it took effect. Further, when the arresting officer, Sergeant Pelletier, made the arrest pursuant to the warrant, he knew only that the warrant was for a violation of a no-contact order—he did not know that the no-contact order was the same one dismissed on September 10, 2018.

The plaintiff, however, argues that Sergeant Barboza would have been aware that the second no-contact order was terminated because he was in court on September 10, 2018, and it was he who chose to seek dismissal of the charges against the plaintiff as that arrest was predicated on the first, inactive, no-contact order. Moreover, Sergeant Barboza testified that after a case is dismissed, it is a custom and practice of the Tiverton Police Department to go back to the station and enter information into the department's computer system regarding the dismissal by entering the arrest number and closing out the arrest. This information is then available within the department's computer system for anyone within the department to view.

Further, Sergeant Barboza testified that he "probably" came back to the station and "told the guys in detectives, Yeah. This guy's order was not active anymore …. And I closed the case out of the system…." Because Pelletier was a detective, the plaintiff argues, he would have been among those told by Sergeant Barboza of the dismissal.

Additionally, on September 10, 2018, an electronic J-LINKS notification

13

update was sent from the court to the Tiverton Police Department, notifying it of the dismissal of the second no-contact order.

Nevertheless, Sergeant Pelletier testified that he was not aware that the purportedly active no-contact order that led to the December arrest was the second no-contact order that had been dismissed by the court in September. However, the Police Report, which Pelletier authored, seems to indicate that the no-contact order upon which the arrest was based was the second no-contact order, a Tiverton case, for which a J-LINKS electronic notification update was sent to the department on September 10, 2018.

Eleven days had elapsed between Officers Huber and Sergeant Pelletier learning of the existence of the purportedly active no-contact order and Sergeant Barboza's presenting of the arrest warrant. The plaintiff argues that a reasonable individual in Sergeant Barboza's position would have checked the Tiverton Police Department's system in that time span, prior to executing the warrant, and found that the September 10th no-contact order, upon which the December 2018 arrest was based, was inactive. A reasonable officer in Sergeant Barboza's position would also attempt to confirm where the active no-contact order originated from to ensure that it was not a Tiverton case that previously was dismissed. Instead, Sergeant Barboza did not speak with any officers in reviewing the warrant. He testified that once the warrant was left for his review and signature, he believed that the responding officers "followed all the steps. They called RONCO. RONCO confirmed … the protection order [was] active." Yet, the information regarding the dismissal of the second no-

14

contact order was available in the Tiverton Police Department's system at the time of the plaintiff's December arrest, as Sergeant Barboza himself had entered it in, in addition to the J-LINKS notification.

A review of these facts makes clear that to find as a matter of law at this juncture, the Court is required to choose between plausible but conflicting inferences, weigh evidence, and to assess credibility as to what the officers knew or reasonably should have known, or what they in fact did. This the Court cannot do upon a motion for summary judgment. *See Ahmed v. Johnson*, 752 F.3d 490, 495 (1st Cir. 2014); *Dominguez-Cruz v. Suttle Caribe, Inc.*, 202 F.3d 424, 432 (1st Cir. 2000); *Coyne v. Taber Partners I*, 53 F.3d 454, 460-61 (1st Cir. 1995). Material facts are in genuine dispute and thus the Court cannot find as a matter of law whether the December 2018 arrest was supported by probable cause. That is, whether the facts are "sufficient to warrant a prudent person, or one of reasonable caution, in believing, in the circumstances shown, that the suspect has committed … an offense." *Town of Sandown*, 585 F.3d at 504.

The plaintiff has also asserted unlawful seizure in violation of Article 1, § 6 of the Rhode Island Constitution. The protections against unlawful seizure under the Rhode Island Constitution are generally coextensive with the Fourth Amendment to the United States Constitution. *See Brousseau By & Through Brousseau v. Town of Westerly By & Through Perri*, 11 F. Supp. 2d 177, 183 (D.R.I. 1988). The plaintiff's claims under the Rhode Island Constitution therefore do not require a separate analysis.

### c. Qualified Immunity

The Tiverton defendants argue that the officers are shielded from liability by qualified immunity. "The doctrine of qualified immunity protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (internal quotation omitted). To determine whether a defendant is entitled to qualified immunity, a court inquires "(1) whether the facts alleged or shown by a plaintiff make out a violation of a constitutional right; and (2) if so, whether the right was 'clearly established' at the time of the defendant's alleged violation." *Maldonado v. Fontanes*, 568 F.3d 263, 269 (1st Cir. 2009). The second step is in turn made up of two prongs: (1) "the clarity of the law at the time of the alleged civil rights violation" and (2) "whether, on the facts of the case, a reasonable defendant would have understood that his conduct violated the Plaintiff's constitutional rights." *Estrada v. Rhode Island*, 594 F.3d 56, 63 (1st Cir. 2010) (internal quotations omitted).

As explained in the previous section, there are questions of material fact regarding the officers' actions, whether there was probable cause, and, if not, whether any reasonable officer would have known his actions violated the plaintiff's rights. The Court therefore defers judgment on the issue of qualified immunity. *See Ringuette v. City of Fall River*, 146 F.3d 1, 6 (1st Cir. 1998) (holding that when factual disputes exist pertaining to qualified immunity that cannot be resolved on summary judgment, "judges have sometimes deferred a decision until the trial testimony was

16

in or even submitted the factual issues to the jury").

### d. Intentional Infliction of Emotional Distress

The plaintiffs' claim for intentional infliction of emotional distress must fail because he has not demonstrated any "physical symptomatology" caused by the alleged distress. Under Rhode Island law, intentional infliction of emotion distress requires "plaintiffs to allege and prove that physical symptomatology accompanied the distress." *DiBattista v. State*, 808 A.2d 1081, 1088-89 (R.I. 2002). To properly demonstrate physical symptomatology, more is required than general allegations in the pleadings. *Vallinoto v. DiSandro*, 688 A.3d 830, 838 (R.I. 1997). The law requires a plaintiff, to survive a motion for summary judgment, to prove allegations pf physical symptomatology through competent expert medical evidence. *DiBattista*, 808 A.2d. at 1088-89; *Vallinoto*, 688 A.3d at 838.

Here, the plaintiff has provided no such evidence. Accordingly, the Tiverton defendants' Motion is granted with respect to the intentional infliction of emotional distress claim.

### e. Violation of Privacy Rights (R.I.G.L. § 9-1-28.1(a)(1))

The plaintiff alleges that the Tiverton defendants are liable under R.I.G.L. § 9-1-28.1(a)(1), which provides for a "right to be secure from unreasonable intrusion upon one's physical solitude or seclusion." "[T]o recover for a violation of this right," a plaintiff must establish "an invasion of something that is entitled to be private or would be expected to be private." R.I.G.L. § 9-1-28.1(a)(1)(i)(A).

The facts presented here do not satisfy an intrusion upon seclusion as

contemplated by the invasion of privacy statute. First, the Tiverton officers reviewed public records while responding to calls for service involving the plaintiff. Under the right-to-privacy statute "there is no liability for the examination of a public record concerning the plaintiff." *Swerdlick v. Koch*, 721 A.3d 849, 857 n.11 (R.I. 1998). Secondly, both arrests occurred in public, at the Twin River Casino in Tiverton. The right-to-privacy statute "only protects against an invasion of 'one's physical solitude or seclusion,' neither of which is present when one ventures outside his or her house into the public view." *Id.* at 857.

The Tiverton defendants' Motion therefore is granted on the plaintiff's claims under R.I.G.L. § 9-1-28(a)(1).

### f. Supervisory Liability Claims

Although the plaintiff alleges in his Second Amended Complaint that the Town of Tiverton and Chief Patrick Jones "failed to properly hire, train, supervise, and discipline officers in the department," the plaintiff conceded at oral argument that this claim is unsupported by the evidence. As such, the Tiverton defendants' Motion on this claim is granted.

### g. Negligence

The Tiverton defendants argue that the plaintiff's negligence claim against them should be dismissed because it relies upon the same set of facts as the Fourth Amendment claim and therefore should merge with that claim. The plaintiff, however, argues that each claim depends upon a different set of facts: the negligence claim arises from the Tiverton defendants' actions between the plaintiff's September

10, 2018, court appearance and his arrest on December 28, 2018, while the Fourth Amendment claim arises from the arrest itself.

As discussed above, there are genuine issues of material fact with respect to the acts or omissions of the Tiverton defendants leading to the December arrest. The Court therefore defers ruling on Tiverton defendants' Motion on this issue until such facts are determined.

### 2. The Plaintiffs' Claim of Negligence Against the State

The plaintiff informed the Court at oral argument that he is withdrawing his Motion for Partial Summary Judgment against the State for the December 2018 arrest, conceding that there are questions of fact on his claim of negligence for that arrest.

## IV.  CONCLUSION

For the foregoing reasons, the Court rules as follows:

1. **The plaintiff's Motion for Partial Summary Judgment** (ECF No. 30) is GRANTED against the State on the issue of liability for the September 8, 2018 arrest. That Motion is DENIED against all defendants with respect to the December 28, 2018, arrest.

2. **The Tiverton defendants' Motion for Summary Judgment** (ECF No. 35) is GRANTED in Part as follows:

    - Any claims against the Tiverton defendants arising from the September 8, 2018, arrest.

    - Fourteenth Amendment claims for violation of substantive due

19

- process rights: Counts I, II, and XI.
- State-law claims of intentional infliction of emotional distress: Counts IV, IX, and XIV.
- State-law claims of violation of the right of privacy in contravention of R.I.G.L. § 9-1-28.1(a)(1): Counts V, X, and XV.
- Supervisory claims against the Town of Tiverton and Chief Patrick Jones: Count XVI.

The Tiverton defendants' Motion is DENIED with respect to the plaintiff's claims of unreasonable search and seizure in violation of the Fourth Amendment of the United States Constitution and Article I § 6 of the Rhode Island Constitution: Counts II, III, VII, VIII, XII, and XIII.

The Court defers ruling on the Tiverton defendants' Motion with respect to the plaintiff's claim of negligence for the December 28, 2018, arrest (Counts XV, XVI, XVII, and XVIII) and on the Tiverton defendants' defense of qualified immunity.

IT IS SO ORDERED.

_____
Mary S. McElroy
United States District Judge
March 22, 2021