UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | |
|---|---|
| ANTONE SILVA, <br>     *Plaintiff,* <br> v. <br><br> STATE OF RHODE ISLAND, TOWN OF TIVERTON, PATRICK W. JONES, Individually and as Chief of Police for the Tiverton Police Department, SERGEANT MICHAEL BARBOZA, JOSHUA PELLETIER and RYAN HUBER, <br>     *Defendants.* | C.A. No. 1:19-cv-00429-MSM-LDA |

## TIVERTON DEFENDANTS' PRETRIAL MEMORANDUM

### I.   PARTIES AND ATTORNEYS

1. <u>Plaintiff</u> – Antone Silva ("Plaintiff") – represented by Brian R. Cunha, Esq.

2. <u>Defendants</u> – Town of Tiverton ("Town"), Chief of Police Patrick W. Jones ("Chief Jones"), Detective Lieutenant Michael Barboza ("Lt. Barboza"), Sergeant Joshua Pelletier ("Sgt. Pelletier"), and Patrolman Ryan Huber ("Officer Huber") – represented by Marc DeSisto, Esq. and Patrick K. Burns, Esq.[1]

3. <u>Defendant</u> – State of Rhode Island ("State") – represented by Chrisanne E. Wyrzykowski, Assistant Attorney General, and Justin J. Sullivan, Special Assistant Attorney General

### II.   COUNTS IN THE COMPLAINT[2]

---

[1] As described more fully in Footnote 2 below, the Town and Chief Jones were dismissed from this matter as a result of the parties' cross-motions for summary judgment. The remaining Tiverton Defendants are Lt. Barboza, Sgt. Pelletier, and Officer Huber.

[2] All of Plaintiff's claims under the Fourteenth Amendment, all of his claims for intentional infliction of emotional distress, all of his claims for violation of his privacy rights, and all of his claims against the Town and Chief Jones (which comprise a supervisory liability claim under 42 U.S.C. § 1983 and a state-law respondeat superior claim), were dismissed as a result of the parties' cross-motions for summary judgment. Therefore, the claims that remain are the Fourth Amendment claims (one each against Lt. Barboza, Sgt. Pelletier, and Officer Huber), the corresponding claims

1.     Violation of Plaintiff's Fourteenth Amendment substantive due process rights, actionable under 42 U.S.C. § 1983 (one count each against Lt. Barboza, Sgt. Pelletier, Officer Huber, and the Town/Chief Jones);

2.     Unreasonable search and seizure in violation of the Fourth Amendment, actionable under 42 U.S.C. § 1983 (one count each against Lt. Barboza, Sgt. Pelletier, Officer Huber, and the Town/Chief Jones);

3.     Unreasonable search and seizure in violation of Article I, § 6 of the Rhode Island Constitution (one count each against Lt. Barboza, Sgt. Pelletier, and Officer Huber);

4.     Intentional infliction of emotional distress (one count each against Lt. Barboza, Sgt. Pelletier, and Officer Huber);

5.     Violation of privacy rights under R.I. Gen. Laws § 9-1-28.1(a)(1) (one count each against Lt. Barboza, Sgt. Pelletier, and Officer Huber);

6.     Negligence (one count each against Lt. Barboza, Sgt. Pelletier, Officer Huber, the Town/Chief Jones, and the State).

## III.   FACTUAL BACKGROUND

A.     *Plaintiff's initial no contact order and September 8, 2018 arrest*[3]

On April 14, 2018 at approximately 7:47 PM, Plaintiff was arrested by the Tiverton Police Department for domestic simple assault and battery against his girlfriend, Darcie Silvia ("Silvia"). The same day, a no contact order against Plaintiff, with Silvia as the protected party, was drafted. The information pertaining to this no contact order was entered by a clerk at the Second Division

under the Rhode Island Constitution (one each against the same Defendants), and the negligence claims (one each against Lt. Barboza, Sgt. Pelletier, Officer Huber, and the State).

[3] Plaintiff's complaint initially encompassed arrests on both September 8, 2018 and December 28, 2018.  However, the State has conceded liability for the September arrest, leaving only the December arrest outstanding.  Therefore, the remaining claims against the Tiverton Defendants concern only the December arrest.  In the interest of clarity, the September arrest and the leadup thereto are referenced here only as they relate to the events surrounding the December arrest.

District Court ("District Court") into the Rhode Island Judiciary's Odyssey system on or about April 18, 2018.  The Town later dismissed the no contact order on June 21, 2018.  The same day, a District Court clerk entered this dismissal into the District Court's Odyssey computer system, on a screen entitled "Case Events."  However, the District Court clerk did not enter the information into the matter's "Protective Order" tab, another section contained within the Odyssey system where the termination of a no contact order is documented.  After June 21, 2018, therefore, the "Case Events" section indicated that Plaintiff's no contact order was dismissed, but the "Protective Order" tab did not.  The State's RONCO system only receives information contained in the "Protective Order" tab, not the "Case Events" screen.

On September 8, 2018 at approximately 10:26 PM, Sgt. Pelletier arrested Plaintiff at Twin River Casino in Tiverton for violation of a no contact order.  Sgt. Pelletier saw Plaintiff and Silvia speaking with casino security and, through dispatch, ran a warrant and order check for both parties.  These checks produced a RONCO record indicating the existence of an active no contact order between Plaintiff and Silvia, which turned out to be the April no contact order that had been dismissed in June.  Lt. Barboza, the Tiverton Police Department's prosecution officer, determined this when Plaintiff was arraigned on September 10, 2018.  He accordingly moved to dismiss Plaintiff's case.  The District Court fully terminated the no contact order that day.  The same day, however, the District Court also generated, and then terminated, a second no contact order against Plaintiff, with Silvia as the protected party.  Although the Attorney General accepted the creation of this second no contact order into the State's BCI system the same day it was created (September 10, 2018), it did not accept the termination of that no contact order into the BCI system until December 31, 2018.

C.      *Plaintiff's December 19, 2018 arrest warrant*

On December 8, 2018 at approximately 9:24 PM, Officer Huber was dispatched to Plaintiff's home in response to a reported breaking and entering.  Plaintiff had reported to dispatch that Silvia had broken the back door of his house and fled toward Fall River in a black Honda Civic.  The dispatcher also advised Officer Huber that there was an active no contact order between Plaintiff and Silvia, with Silvia as the protected party.  Upon reaching the house, Officer Huber spoke with Plaintiff, who told him that Silvia came to the house while he was cooking dinner at about 9:00 PM that night, saw him in the kitchen, and attempted to enter through the kitchen door. He stated further that Silvia broke the door frame in the process and immediately left the scene. Officer Huber and Patrolman Adam Brillon, who also responded to the scene, found the kitchen to be in disarray, and the door frame had been broken off and was scattered on the kitchen floor. Both officers, however, believed that the scene had been staged, as the damage to the door did not appear to them to be recent.  At Officer Huber's request, Plaintiff showed him footage from a surveillance camera mounted outside the damaged doorway.  The footage showed Silvia leaving the house at about 9:00 PM, calmly and seemingly without incident.  Plaintiff appeared highly intoxicated to Officer Huber during this encounter, to the point that Officer Huber was unable to take a statement from him.  Officer Huber told him that he would contact him the next day to take his statement.

Plaintiff contacted the station later that night and gave Officer Huber an address for Silvia in Fall River.  The Fall River Police Department contacted Silvia and told her to contact the Tiverton Police Department, and Officer Huber also attempted to contact her himself.  Silvia called Officer Huber at about 11:00 PM and told him that she had first arrived at Plaintiff's home at about 6:00 PM that evening.  She had bought steaks earlier that day and brought them to the house to cook.  She told Officer Huber that she and Plaintiff were drinking, and that Plaintiff eventually

became very intoxicated and confrontational, prompting Silvia to leave at about 9:00 PM before the situation escalated.  Officer Huber asked her about the damaged door frame, and Silvia told him that Plaintiff had broken it while intoxicated several weeks, possibly even months, prior.

On December 9, 2018, Officer Huber returned to Plaintiff's house to take his statement, and again found Plaintiff to be highly intoxicated.  Plaintiff showed Officer Huber more footage from the surveillance camera, which showed Silvia arriving at the house at about 6:00 PM. Plaintiff explained that the two of them were drinking and cooking together while trying to work out their past issues.  They eventually began arguing; Plaintiff then told Silvia to leave, and she did.  When Officer Huber asked him about the damage to the door frame, Plaintiff initially said that he did not want to get anybody in trouble and did not answer further.  When Officer Huber pressed him, he paused and avoided eye contact for a long time before eventually saying that Silvia broke it.  Plaintiff then provided a written statement, which read, "Darcie knocked my door down after told her too leave."

Silvia called Officer Huber at the station on December 10, 2018 to tell him that, on the advice of her attorney, she would not come to the station to provide a statement.  She did, however, recount the events to Officer Huber over the phone, and Officer Huber found that her statements that day were consistent with the version of events she had provided two days prior.

The same day, Officer Huber informed Sergeant James Rossi ("Rossi") of his findings, and Rossi advised him to draft an arrest warrant for Plaintiff for violation of a no contact order. Dispatch ran warrant and order checks, which returned a RONCO record that indicated the existence of a no contact order against Plaintiff with a date issued of September 10, 2018, an expiration date of January 1, 2999,[4] and Silvia as the protected party.  Once the warrant was

---

[4] The expiration date appears in this fashion in the system to indicate that the no contact order remains in effect indefinitely.

drafted, it was then left for Lt. Barboza, who was responsible for reviewing it and determining whether it articulated probable cause for an arrest.  In reviewing it, Lt. Barboza saw that the responding officers had "followed all the steps.  They called RONCO.  RONCO confirmed . . . the protection order [was] active."  He did not speak with any other officers in the course of reviewing or presenting the warrant, nor did his duties or responsibilities require him to do so.  He did not know that the no contact order articulated in the warrant was connected to Plaintiff's September arrest and court appearance.  Satisfied that the warrant articulated probable cause, Lt. Barboza then presented the warrant in the District Court on December 19, 2018, where it was signed by a District Court judge.

> D.     *Plaintiff's arrest on December 28, 2018*

On December 28, 2018 at approximately 11:24 PM, Sgt. Pelletier once again saw Plaintiff at Twin River Casino while working a security detail.  Recognizing him from previous encounters, Sgt. Pelletier asked dispatch to run Plaintiff's name to check for any outstanding warrants or protective orders.  Dispatch confirmed that there was an active warrant for Plaintiff's arrest for violation of a no contact order.  Dispatch's checks also revealed the same RONCO record as the checks run on December 10, 2018 in the course of drafting the arrest warrant.  Sgt. Pelletier did not know that the no contact order for which the arrest warrant had been issued was related to Plaintiff's September arrest, or even that it arose from a matter involving the Tiverton Police Department.

Sgt. Pelletier then requested backup and approached Plaintiff, advising him that he would be escorted to the casino's lobby because there was an active warrant for his arrest.  When Plaintiff, who appeared to be intoxicated, responded that no such warrant existed and that the Tiverton Police Department simply enjoyed arresting him in the casino, Sgt. Pelletier reiterated to him that there

was an active warrant for his arrest and proceeded to escort him to the lobby.  Sgt. Pelletier handcuffed Plaintiff, and another officer then transported Plaintiff to the police station.  Plaintiff remained at the station until approximately 12:07 AM, when he posted bail.

Plaintiff appeared in the District Court on December 31, 2018, at which time the case against him was dismissed because the no contact order that he had purportedly violated was not in effect at the time of his arrest.  The Attorney General accepted the termination of the no contact order into the State's BCI system the same day.

## IV.  APPLICABLE LAW

### A.   *Fourth Amendment*

Plaintiff brings claims of unreasonable search and seizure under the Fourth Amendment against Lt. Barboza, Sgt. Pelletier, and Officer Huber, each arising out of their respective involvements in his arrest.[5]  "[T]he ultimate question for determining whether an arrest violates the Fourth Amendment is . . . whether there was probable cause to believe that the arrestee had committed or was committing a crime."  Wilson v. City of Boston, 421 F.3d 45, 55 (1st Cir. 2005). Probable cause exists when, "at the time of the arrest, the 'facts and circumstances within the officer's knowledge . . . are sufficient to warrant a prudent person, or one of reasonable caution, in believing, in the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense.'"  Holder v. Town of Sandown, 585 F.3d 500, 504 (1st Cir. 2009) (quoting

---

[5] Plaintiff brings corresponding claims against each of the officers under Article I, § 6 of the Rhode Island Constitution. See Second Amended Complaint, Docket at #31, at Counts III, VIII, XIII.  The Rhode Island Supreme Court has repeatedly held that "article 1, § 6 has the same effect as the fourth amendment of the Federal Constitution."  State v. Berker, 391 A.2d 107, 111 (R.I. 1978) (citing State v. Davis, 251 A.2d 394 (R.I. 1969)); see also State v. Foster, 842 A.2d 1047, 1050 n.3 (R.I. 2004) (noting that the Fourth Amendment is "substantively the same as Article 1, Section 6 of the Rhode Island Constitution").  The District of Rhode Island has also held that, generally, "Art. 1, § 6 of the Rhode Island Constitution is co-extensive with the Fourth Amendment of the United States Constitution."  Lt. Barboza, Sgt. Pelletier, and Officer Huber submit, therefore, that they are entitled to summary judgment with respect to Plaintiff's claims under the Rhode Island Constitution for the same reasons they are entitled to summary judgment with respect to the Fourth Amendment claims.

Michigan v. DeFillippo, 443 U.S. 31, 37 (1979)); see also Acosta v. Ames Dep't Stores, Inc., 386 F.3d 5, 9 (1st Cir. 2004) ("Probable cause for an arrest exists when the arresting officer, acting upon apparently trustworthy information, reasonably concludes that a crime has been (or is about to be) committed and that the putative arrestee likely is one of the perpetrators."). This is an objective test that "turns on what a reasonable police officer would conclude based on the evidence actually available at the time (and not on unknown facts or subsequent events)." Valente v. Wallace, 332 F.3d 30, 32 (1st Cir. 2003) (citing Roche v. John Hancock Mut. Life Ins. Co., 81 F.3d 249, 254 (1st Cir. 1996)). It "requires only a *probability* that the defendant committed the crime." Holder, 585 F.3d at 504 (emphasis added) (internal citations omitted). "The only relevant facts are those known to the officer." Id.

Just as it does for an arrest, "[t]he Fourth Amendment requires that a warrant must be supported by probable cause." Wilson, 421 F.3d at 55 (internal citations omitted); see also Hoffman v. Reali, 973 F.2d 980, 985 (1st Cir. 1992) (citing Illinois v. Gates, 462 U.S. 213, 238 (1983)) ("An arrest warrant complies with the Fourth Amendment if, under the totality of circumstances, there is probable cause to believe the suspect committed the offense."). When Officer Huber drafted the arrest warrant on December 10, 2018, he was aware only that Plaintiff and Silvia had spent time together two days prior and that there was a record of an active no contact order between the two parties at that time. Officer Huber included this information in the warrant application, which Lt. Barboza then reviewed and presented in court on December 19. To the extent that Lt. Barboza even recognized Plaintiff's name as he reviewed it and remembered the course of events that occurred in the District Court on September 10, he could not have known from the information at hand that the no contact order Plaintiff had purportedly violated on December 8 was listed as active erroneously. Lt. Barboza knew only that a purportedly active no

contact order between Plaintiff and Silvia was in effect; he did not know, nor did he have reason to know, the date that purported no contact order was created, the particular police department involved, or any other information as to how the no contact order took effect.  Furthermore, when Sgt. Pelletier arrested Plaintiff pursuant to the warrant, he knew only that the warrant was for a violation of a no contact order.  He did not know that the no contact order giving rise to that warrant was the same one that the District Court had both created and dismissed on September 10, 2018. In fact, he was not even aware that the no contact order was from a Tiverton matter.

The facts available to Lt. Barboza, Sgt. Pelletier, and Officer Huber at the time of their respective actions in this matter gave them probable cause with respect to both of Plaintiff's arrests. Therefore, summary judgment should enter with respect to Plaintiff's Fourth Amendment claims.

B.    *Qualified Immunity*

"The doctrine of qualified immunity protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." McDonald v. City of Boston, 334 F. Supp. 3d 429, 438-39 (D. Mass. 2018).  "The ultimate question of qualified immunity should ordinarily be decided by the court." St. Hilaire v. City of Laconia, 71 F.3d 20, 24 (1st Cir. 1995). While factual issues may be sent to the jury, where, as here, material facts are not in dispute, "[t]he ultimate question of whether a reasonable police officer, on the basis of information known to him, could have believed his actions were in accord with constitutional rights is a question of law, subject to resolution by the judge, not the jury." Id. at 24 n.1 (internal quotations and citation omitted).

To determine whether a defendant is entitled to qualified immunity, a court inquires "(1) whether the facts alleged or shown by a plaintiff make out a violation of a constitutional right; and

(2) if so, whether the right was 'clearly established' at the time of the defendant's alleged violation." Maldonado v. Fontanes, 568 F.3d 263 (1st Cir. 2009). The second step involves two prongs: (1) the clarity of the law at the time of the alleged violation, and (2) whether, on the facts of the case, a reasonable defendant would have understood that his conduct violated a plaintiff's constitutional rights. Id.

The Court applies a good faith test that allows questions of qualified immunity to be decided as a matter of law in appropriate cases. Malachowski v. City of Keene, 787 F.2d 704, 714 (1st Cir. 1986). This test requires viewing the official's actions from an objectively reasonable standpoint. Id. The decisive question becomes whether another police officer, standing in the shoes of these Defendants, would have concluded that their actions violated a clearly established statutory or constitutional right. Ricci v. Urso, 974 F.2d 5, 7 (1st Cir. 1992). A "reasonable, although mistaken, conclusion about the lawfulness of one's conduct does not subject a government official to personal liability." Cookish v. Powell, 945 F.2d 441, 443 (1st Cir. 1991).

The First Circuit has observed that the "qualified immunity standard gives ample room for mistaken judgments by protecting all but the plainly incompetent or those who knowingly violate the law." Rivera v. Murphy, 979 F.2d 259, 263 (1st Cir. 1992) (internal quotation marks and citation omitted). When addressing claims for qualified immunity on summary judgment, the Court must grant summary judgment if the plaintiff fails to generate a trialworthy issue by undermining the evidence supporting the defendant's objectively reasonable belief that his actions were lawful. Dean v. City of Worcester, 924 F.2d 364, 367 (1st Cir. 1991).

At the outset, the Tiverton Defendants submit that Plaintiff has failed to establish any violation of his Fourth Amendment rights by Lt. Barboza, Sgt. Pelletier, or Officer Huber. As discussed above, the officers had probable cause in drafting and presenting a warrant for his arrest

10

for violation of a no contact order on December 10, and 19, 2018, respectively. Nevertheless, the arrest did not violate "clearly established statutory or constitutional rights of which a *reasonable person would have known*." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982) (emphasis added).

Nevertheless, the officers in this matter are entitled to qualified immunity by virtue of the arrest warrant. "When officers make an arrest subject to a warrant . . . even if probable cause is lacking, officers are entitled to qualified immunity 'unless the warrant application is so lacking in indicia of probable cause as to render official belief in its existence unreasonable.'" Abreu-Guzman v. Ford, 241 F.3d 69, 73 (1st Cir. 2001) (quoting St. Hilaire, 71 F.3d at 28). "Similarly, an officer who conducts an arrest pursuant to a warrant is liable only 'where the officer should have known that the facts recited in the affidavit did not constitute probable cause.'" Id. (quoting Rodriques v. Furtado, 950 F.2d 805, 812 (1st Cir. 1991)). "Where the sufficiency of the facts fall into the grey area appropriate for judicial determination, submission of the affidavit to a magistrate will insulate the officer from liability." Briggs v. Malley, 748 F.2d 715, 719, 721 (1st Cir. 1984). "[L]iability does not attach simply because there is a later determination of no probable cause." Id.

The relevant question is whether Officer Huber and Lt. Barboza's conclusion that there was probable cause to seek an arrest warrant was, "at the time, *sufficiently reasonable* to afford [them] the protection of qualified immunity." McDonald, 334 F. Supp. 3d at 439 (emphasis added) (quoting Lewis v. City of Boston, 829 F. Supp. 471, 476 (D. Mass. 1993)). In other words, the question is whether "[a]nother officer, standing in [their] shoes and possessing the same information, might reasonably have made the same decision." Id. "Even law enforcement officials who reasonably but mistakenly conclude that probable cause is present are entitled to immunity." Id.

At the time Officer Huber drafted the warrant, he was aware only that Plaintiff and Silvia were together for about three hours on December 8, 2018 and that dispatch's checks had yielded an active no contact order between the two parties.  These same facts, and nothing more, were available to Lt. Barboza when he reviewed the warrant and presented it in court.  He did not know that the no contact order described in the warrant arose from Plaintiff's April 2018 arrest, had previously been dismissed, and, in reality, was no longer active.  For all Lt. Barboza knew, Plaintiff had been arrested by another police department, and had obtained another no contact order as a result, between his court appearance on September 10 and his encounter with Officer Huber on December 8.  Another officer standing in either Officer Huber or Lt. Barboza's shoes, armed with the same information they had at the time, would very well have decided, reasonably, that this information constituted probable cause for an arrest warrant.

Furthermore, the warrant application drafted by Officer Huber and presented by Lt. Barboza did not lack evidence of probable cause such that "belief in its contents would be unreasonable."  Abreu-Guzman, 241 F.3d at 73.  The affidavit provided in part that dispatch informed the officers who responded to Plaintiff's home on December 8, 2018 of an active no contact order between Plaintiff and Silvia.  It further provided that the officers learned from Plaintiff and confirmed through further investigation that he and Silvia were together for approximately three hours on that date.  Based on these facts, a belief that there was probable cause that Plaintiff had violated an active no contact order was not unreasonable.  Nevertheless, even in the event these facts do fall into the proverbial "gray area," Lt. Barboza submitted them to a magistrate, who then signed both the affidavit and the arrest warrant, thereby insulating Lt. Barboza and Officer Huber from liability.  See Briggs, 748 F.2d at 721.  Since there was probable cause to seek a warrant for Plaintiff's arrest for violation of a no contact order in December 2018,

Lt. Barboza, Sgt. Pelletier, and Officer Huber are entitled to qualified immunity with respect to Plaintiff's Fourth Amendment claims.

    C.    *Negligence*

    Plaintiff pleads claims of negligence against each of the Tiverton Defendants.  These claims are grounded in the same facts as Plaintiff's Fourth Amendment claims, namely his arrest in December of 2018.  The negligence claims should, therefore, merge with those Fourth Amendment claims, because a person cannot commit an intentional tort negligently.  See <u>Mucci v. Town of N. Providence</u>, 815 F. Supp. 2d 541, 548 (D.R.I. 2011) (internal citation omitted) (noting that "a plaintiff may not advance claims of excessive force and negligence predicated on identical facts").  Although this Court has only applied this principle with respect to a Fourth Amendment claim for excessive force, courts in other Circuits have applied it more broadly.  <u>See Whitfield v. Tri-Metro. Transp. Dist.</u>, Civil No. 06-1655-HA, 2009 U.S. Dist. LEXIS 26469, at *28 (D. Or. Mar. 30, 2009) (internal citation omitted) ("[A]s a matter of principle, the court recognizes that a plaintiff may allege negligence as a basis for recovery separate from § 1983 for acts arising in the Fourth Amendment search and seizure context.  The negligence claim, however, should not be founded on the same facts that give rise to the § 1983 claim."); <u>see also Evans v. City of Etowah</u>, Case No:1:06-cv-252, 2008 U.S. Dist. LEXIS 27275, at *31-32 (E.D. Tenn. Apr. 3, 2008) (in case involving allegations of false arrest, plaintiff "cannot maintain a negligence action based on the intentional torts of the officers, and does not identify any negligence independent of those actions").

    The rationale for merging negligence and excessive force claims based on identical facts applies equally to claims for negligence and unlawful seizure.  In the instant matter, the facts detailed in Plaintiff's Second Amended Complaint amount to allegations of false arrest, an

intentional tort.  Plaintiff uses this single set of facts as the basis for both his Fourth Amendment claims and his negligence claims.  His allegations, therefore, "do not reflect negligence, but rather an intentional tort with a conclusory allegation of negligence."  Hall v. Lanier, 708 F. Supp. 2d 28, 32 (D.D.C. 2010) (quoting Dist. of Columbia v. Chinn, 839 A.2d 701, 711 (D.C. 2003)); see also Sabir v. Dist. of Columbia, 755 A.2d 449, 452 (D.C. 2000) ("[I]t is settled that a person cannot negligently commit an intentional tort.").  Plaintiff does not offer any theory of recovery for his negligence counts beyond the allegedly false arrest December of 2018.  Consequently, he cannot maintain those negligence claims in this matter.

Plaintiff's negligence claims nevertheless fail on their merits because, as detailed above, the officers involved had probable cause to support both arrests.  "A general negligence count requires a plaintiff to show, at a bare minimum, a legally cognizable duty and a breach of that duty." Acosta, 386 F.3d at 12 (internal citations omitted).  Since the Tiverton officers in this matter reasonably concluded that there was probable cause to issue a warrant for Plaintiff's arrest in December 2018, Plaintiff falls short in his effort to establish the basic elements of his negligence claims.  Id. (finding that plaintiff "failed to establish the essential elements of her general negligence claim" where "the police acted reasonably in making their probable cause determination and had no duty to investigate further before arresting [her]"); see also Forest v. Pawtucket Police Dep't, 290 F. Supp. 2d 215, 233 (D.R.I. 2003) (granting summary judgment to municipal defendants on a negligence claim where the police officers involved "conducted an adequate investigation and had probable cause to arrest [plaintiff]"), aff'd on other grounds, 377 F.3d 52 (1st Cir. 2004).  The Tiverton Defendants, therefore, are entitled to summary judgment with respect to Plaintiff's negligence claims.

**V.    EVIDENTIARY ISSUES**

Plaintiff has a criminal record that includes arrests dating back to November 2017. Defendants expect that this criminal record may be the subject of motions in limine.

**VI.   ESTIMATED LENGTH OF TRIAL**

The Tiverton Defendants anticipate that trial will last approximately 3 to 4 days, accounting for the shorter trial days during the COVID-19 pandemic.

Defendants,
By their attorneys,

*/s/Marc DeSisto*

*/s/Patrick K. Burns*
Marc DeSisto, Esq. (#2757)
Patrick K. Burns, Esq. (#10107)
DESISTO LAW LLC
60 Ship Street
Providence, RI 02903
(401) 272-4442
marc@desistolaw.com
pburns@desistolaw.com

CERTIFICATION OF SERVICE

I hereby certify that on this 12th day of October, 2021, I electronically filed and served this document through the electronic filing system upon the following:

Brian R. Cunha, Esq. (#4074)           Chrisanne Wyrzykowski (#7565)
brian@briancunha.com                    cwyrzykowski@riag.ri.gov

                                        Justin J. Sullivan (#9770)
                                        jjsullivan@riag.ri.gov

*/s/Patrick K. Burns*

15